STATE OF CONNECTICUT *v.* FRANK OGRINC
(10737)

DALY, FOTI and HEIMAN, Js.

Argued October 26—decision released December 15, 1992

*William Holden,* public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, was *Linda Howe,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of possession of heroin with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b). The defendant claims that the trial court improperly denied (1) his motions for judgment of acquittal based on the insufficiency of the evidence adduced at trial and (2) his motion to dismiss because the notice requirements of General Statutes § 54-82c (c) were not satisfied. We disagree.

The following facts are relevant to this appeal. On June 25, 1989, at approximately 2 p.m., Bridgeport police officers John Pribesh, Jr., and Robert Bigelow were patrolling Father Panick Village in their marked cruiser when Pribesh first observed the defendant and heard him yell "five-o," an exclamation typically used to warn drug dealers of the presence of police in the area. Bigelow also heard the warning. The defendant was walking in an area of Father Panick Village that is particularly notorious for street level drug sales. The defendant turned and walked away from the police cruiser after calling out the warning.

Pribesh knew the defendant, a project resident, having seen him there previously. From a distance of thirty feet, both officers saw what appeared to be currency in the defendant's right hand. Pribesh noticed a small,

dark object clenched in his left fist, and Bigelow testified that he noticed that the defendant's left hand was tightly clenched. Both officers observed the defendant make a backhanded tossing motion with his left hand, discarding the object under an automobile. No one else was in the area of the automobile at that time.

The officers never lost sight of the defendant when they exited their vehicle to stop him and retrieve the object. Pribesh retrieved twenty-four glassine bags tied together with an elastic band from under the front bumper of the car where the defendant had tossed the object. At the time he was arrested, five $1 bills and one $5 bill were found in his possession. The contents of ten of the glassine bags were subsequently tested at the state laboratory and were found to be heroin.

The defense presented evidence that the defendant had been in the area only long enough to get change for a $10 bill at a store near where he was arrested, and that he had been with the woman with whom he lived the whole day until his arrest. Further facts are set forth in this opinion as necessary.

I

The defendant's first claim is that the trial court improperly denied his motion for judgment of acquittal because the evidence adduced at trial was insufficient to sustain his conviction under General Statutes § 21a-278 (b).[1] The defendant asserts that the state

---

[1] General Statutes § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marihuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execu-

failed to prove beyond a reasonable doubt that he possessed narcotics and that he intended to sell narcotics, two elements of the crime of possession of narcotics with the intent to sell by a person who is not drug-dependent.

"The two-part test for appellate analysis of a claim of evidentiary insufficiency is well established. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. *State* v. *Montanez,* 219 Conn. 16, 19, 592 A.2d 149 (1991). It should also be noted that [i]n this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . *State* v. *Allen,* 216 Conn. 367, 381, 579 A.2d 1066 (1990)." (Internal quotation marks omitted.) *State* v. *Salz,* 26 Conn. App. 448, 458, 602 A.2d 594, cert. granted, 222 Conn. 901, 606 A.2d 1329 (1992). "This court will not reweigh the evidence or resolve questions of credibility in making such a determination." *State* v. *Melillo,* 17 Conn. App. 114, 117, 550 A.2d 319 (1988). "It is within the province of the jury to draw reasonable and logical inferences from the facts proven. *State* v. *Carter,* 196 Conn. 36, 44, 490 A.2d 1000 (1985)." (Internal quotation marks omitted.) *State* v. *Ruth,* 16 Conn. App. 148, 154, 547 A.2d 548 (1988), cert. denied, 209 Conn. 827, 552 A.2d 434 (1989).

tion of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

## A

"In order to prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. *State* v. *Alfonso,* 195 Conn. 624, 633, 490 A.2d 75 (1985); *State* v. *Parent,* [8 Conn. App. 469, 473, 513 A.2d 725 (1986)]." (Internal quotation marks omitted.) *State* v. *Melillo,* supra, 117–18. The defendant contends that this case is comparable to *State* v. *Brunori,* 22 Conn. App. 431, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 611 (1990), where we found the evidence was insufficient to support a conviction of possession of narcotics in violation of General Statutes § 21a-279 (a) and possession of drug paraphernalia in violation of General Statutes § 21a-267 (a). In *Brunori,* the officers observed the defendant bend down behind a car with his arm stretched and then stand up. They found narcotics and drug paraphernalia near where the defendant had bent down. Because proof of possession requires more than the mere presence of the defendant near the contraband; id., 436–37; the fact that the officers could testify only that the defendant bent down behind the car as if he was discarding something was insufficient to support a conviction. Here, the officers actually observed the toss. "If a person is observed by a police officer discarding a package of some sort, and the officer then determines that the abandoned property is contraband, such evidence, although admittedly not as strong as that obtained in a continuous surveillance case, would, nevertheless pass muster for purposes of denying a motion for judgment of acquittal." Id., 437.

Here, the officers actually saw the defendant toss an item under the front of a car. The object was immediately retrieved from underneath the front of the auto-

mobile and it was found to be twenty-four glassine bags of heroin. As in *State* v. *Melillo,* supra, 116–118 (as part of a staged narcotics sale, the police observed the defendant walking around a tree in which narcotics were later found), the evidence here established the defendant's possession of heroin.

Thus, after viewing the evidence in the light most favorable to sustaining the verdict, we find that the jury could reasonably and logically have found from the evidence elicited at trial that the defendant possessed the heroin.

### B

The defendant also claims that the element of intent to sell was not proven beyond a reasonable doubt. Proof of intent is usually established through circumstantial evidence from which the jury may draw reasonable and logical inferences. *State* v. *Napoleon,* 12 Conn. App. 274, 284, 530 A.2d 634, cert. denied, 205 Conn. 809, 532 A.2d 78 (1987), citing *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). "[W]e note that [i]t is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Napoleon,* supra, 284–85.

"The quantity of narcotics found in the defendant's possession [is] probative of whether the defendant intended to sell the drugs." *State* v. *Jennings,* 19 Conn. App. 265, 270, 562 A.2d 545, cert. denied, 212 Conn. 815, 565 A.2d 537 (1989). Also indicative of the defendant's intent to sell narcotics is the manner in which the narcotics are packaged. *State* v. *Ruth,* supra, 155; *State* v. *Napoleon,* supra, 284. Evidence demonstrating that the defendant was present in a known drug trafficking area further suggests an intent to sell. *State* v. *Ruth,* supra, 155.

The defendant possessed twenty-four glassine bags, each containing heroin, held together by an elastic band in a manner that allows drug dealers easily to peel off a bag for a sale. The officers testified that these small glassine bags are commonly used to package heroin for sale and testimony before the jury established that a buyer normally will purchase one to two bags at a time. The value of the heroin the defendant possessed was $240. The manner of packaging and the quantity of the heroin are consistent with street level heroin sales and are indicative of the defendant's intent to sell the heroin.

Furthermore, the defendant's conduct was incriminating. When the defendant observed the police cruiser he warned other drug dealers of its presence, he immediately turned away from the cruiser, and he attempted to conceal the heroin he held in his left hand before tossing it underneath the car. The officers testified that this behavior is normal practice for narcotics dealers trying to avoid being apprehended. These events occurred in an area known for narcotics sales. This evidence sufficiently demonstrated the defendant's intent to sell beyond a reasonable doubt.

Therefore, after our review of this record, we find that there was more than sufficient evidence to allow the jury to have found beyond a reasonable doubt that the defendant was guilty of possession of a narcotic substance with intent to sell.

## II

The defendant claims that the charge against him should have been dismissed by the trial court as a penalty for the department of correction's failure to issue him written notice of his right to a speedy trial pursuant to General Statutes § 54-82c. On September 18, 1990, the defendant filed a motion to dismiss the charge claiming that he had been incarcerated since Septem-

ber 11, 1989, as a prisoner sentenced on unrelated charges, but had never been notified of his right to a speedy trial on the pending narcotics charge of this case in contravention of the notification requirements of General Statutes § 54-82c (c).

There is no dispute that approximately one year elapsed from the date of his incarceration until the commencement of his trial on September 18, 1990, and that he was never given notice pursuant to General Statutes § 54-82c. "[T]he statute places clear and unambiguous obligations on state correction officials. Whenever a person has begun a term of imprisonment in a correctional institution in this state, § 54-82c (c) provides in pertinent part that a 'warden, community correctional center administrator or other official having custody of the prisoner shall promptly inform him in writing of the source and contents of any untried indictment or information against him concerning which the warden, administrator or other official has knowledge and of his right to make a request for final disposition thereof.' This provision, by its very terms, places two related but independent obligations on correction officials: (1) to inform a prisoner of charges pending against him; and (2) to inform the prisoner of his right to request speedy disposition of those charges." *State* v. *Milton,* 26 Conn. App. 698, 704, 603 A.2d 750, appeal dismissed, 224 Conn. 163, 617 A.2d 460 (1992).

The question before us, therefore, is whether the correction officials fulfilled both obligations of the statute. " 'On the few occasions that we have had the opportunity to apply General Statutes [§ 54-82c] . . . we have required strict compliance with the statutory notice procedures.' " Id., 711. The failure of correction officials to notify the defendant of the charge pending against him and of his right to demand a speedy disposition of the pending charge violated the provisions of that act. We must now consider whether dismissal

is the appropriate remedy for the failure of the state to provide notice, as the defendant claims.

The remedy for the state's noncompliance with General Statutes § 54-82c (c) has not been mandated by the legislature. Id., 712 n.6. In contrast, General Statutes § 54-82d provides for the remedy of dismissal if the state fails to try the defendant within 120 days after his statutory right to a speedy trial is invoked. Thus, to determine the proper remedy for the failure of the correction officials to notify the defendant of his rights under § 54-82c (c), we have relied on the balancing principles set forth in *Barker* v. *Wingo,* 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), a case in which the Supreme Court considered the proper remedy for the deprivation of the constitutional right to a speedy trial. *State* v. *Milton,* supra, 712–13, citing *State* v. *Herring,* 210 Conn. 78, 89, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989).

We rely on the four factors weighed in *Barker* v. *Wingo,* supra, to determine the proper remedy in this case. Those factors include "the length of the delay, the reasons for the delay, the defendant's assertion of his right, and the prejudice to the defendant. Id., 530; *State* v. *Herring,* supra, 89–90; *State* v. *Foshay,* [12 Conn. App. 1, 13, 530 A.2d 611 (1987)]." *State* v. *Milton,* supra, 713. "None of these factors standing alone would demand a set disposition; rather, it is the total mix which determines whether the defendant's right was violated. *State* v. *Nims,* [180 Conn. 589, 592, 430 A.2d 1306, (1980)]." *State* v. *Flowers,* 198 Conn. 542, 544, 503 A.2d 1172 (1986). The trial court denied the defendant's motion to dismiss after balancing the factors. The trial court's conclusions will stand unless we find that they are clearly erroneous. *State* v. *Flowers,* supra, 544. We find that the trial court's decision was not clearly erroneous because the defendant failed to elicit evidence that supported the factors found in *Barker* v. *Wingo,* supra.

As to the first factor, there is no question that the length of the delay here was approximately fifty-three weeks, a time period longer than the 120 day period referred to in § 54-82d. This length of time, however, is not excessive when compared to cases such as *State v. Flowers,* supra, where the delay was eighteen months.[2] As in *Flowers,* the delay here does not indicate a clear violation of the defendant's right to a speedy trial. As the trial court noted, the defendant has not provided a clear record to explain the delay, much less to demonstrate the state's fault for it. In considering the third factor, we find it significant, as did the trial court, that the defendant did not assert his right to a speedy trial until the day his trial commenced when the motion to dismiss was filed. Thus, this factor weighs in favor of neither party. *State v. Milton,* supra, 714–15.

We now consider the fourth factor, prejudice, which is considered the linchpin of the speedy trial claim. *State v. Flowers,* supra, 551. "In light of the lack of any evidence of record that the conditions of the defendant's incarceration including his ability to participate in particular prison programs was adversely affected by the delay caused by the statutory violation, we must resolve the final *Barker* factor against the defendant." *State v. Milton,* supra, 716. Thus, the trial court properly concluded that "the evidence does not . . . bear out any great prejudice."

We conclude that under these circumstances, dismissal is not the appropriate remedy for the violation of the defendant's right to statutory notice under General Statutes § 54-82c (c). The trial court properly denied the defendant's motion to dismiss the charge against him.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[2] The Supreme Court compared *State v. Flowers,* 198 Conn. 542, 503 A.2d 1172 (1986), to other cases with delays ranging from nineteen months to over five years where no violation was found. Id., 551.