[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant has moved to dismiss the Information against him claiming prosecution is barred because of non-compliance with the Interstate Agreement on Detainers, (IAD), § 54-186 of the general statutes; the 6th amendment to the U.S. Constitution and Article I, § 8 of the Connecticut Constitution, he also claims the Statute of Limitations bars prosecution (Connecticut General Statutes § 54-193). The Court agrees that there was a violation of the IAD and under the circumstances of this particular case, the Motion to Dismiss should be granted.
 I Statute of Limitations
Section 54-193(b) provides that:
 "No person may be prosecuted for any offense . . . for which the punishment is or may be imprisonment in excess of one year, except within five years next after the offense has been committed. . . ."
The timely issuance of an arrest warrant tolls the statute of limitations if it is executed by the state without unreasonable delay. State v. Crawford, 202 Conn. 443, 447 (1987); State v.Figueroa, 235 Conn. 145, 178-182 (1995). In this case, an arrest warrant issued against Tomczak on August 15, 1985 for offenses which allegedly occurred on or about June 29, 1985. CT Page 5654
The defendant was aware of the investigation and had left Connecticut by the time the warrant was issued. The investigating trooper made efforts to locate him through contact with a family member, by a motor vehicle check and other places which might have a record of his whereabouts. He relayed an NCIC teletype to notify police departments nationwide and did a fugitive up-date every six months. In July 1990, the Connecticut state police were notified that the defendant was being held in New York state. A detainer was immediately lodged in New York, and while subsequent errors on the part of New York authorities resulted in lengthy delay, the investigating trooper had periodic contact with New York authorities to check on the defendant's status there. The Court does not conclude that the state of Connecticut or its agents unreasonably delayed the execution of the arrest warrant.
 II Violation of IAD
There are several questions or issues to be decided in determining if there was a violation of the IAD, and if so, what the appropriate remedy should be.
First, was a detainer "lodged" with the New York Departmentof Corrections? The Court concludes it was.
The State claims that the warrant was lodged while the petitioner was still in pre-trial status and since the IAD applies to prisoners serving a sentence, the lodging of a warrant before the prisoner is sentenced is of no legal consequence. The provisions of the IAD which trigger the notification to an inmate are, indeed, not applicable until and unless the inmate is serving a sentence. However, this Court cannot agree that the filing of a detainer before the inmate is actually sentenced is a nullity. New York has policies and procedures to handle detainers lodged against pre-trial prisoners and has, as a signatory to the IAD, undertaken to properly notify inmates eligible for IAD relief.
On July 6, 1990 the Connecticut State Police at Troop K was notified that Tomczak was being held in New York. On that same day a warrant was lodged with the Sullivan County jail in New York, where Tomczak was being held in pre-trial confinement. That facility, as a pretrial jail, was not required to officially notify Tomczak of the detainer nor provide him with the forms CT Page 5655 required to process a speedy trial application.
In June 1991, he was convicted of the New York violations and on September 20, 1991 was sentenced to two consecutive terms of 25 years to life.
On October 3, 1991 he was transferred from the Sullivan County jail to a New York State correctional facility called "Downstate." Downstate is essentially a reception center where inmates entering the state correctional system are tested and evaluated before assignment to a more permanent location.
The procedure for processing detainers when an inmate is transferred from a county jail to a state facility is to send the detainer along with the inmate documents. When Tomczak was sent to Downstate, his inmate folder accompanied him. That folder included a receipt for the detainer which, if proper procedure had been followed, would have been signed acknowledging its receipt, and returned to Sullivan County. While that was not done, Tomczak's state inmate number, which would have been assigned to him at Downstate was handwritten on the receipt. The receipt (although unsigned) was misfiled in Tomczak's guidance file and only located sometime in 1996. There is other evidence that the detainer was both lodged and forwarded to the New York Department of Corrections. Kim Wood, a records coordinator testified their computer records indicate the warrant was lodged at Downstate.
From Downstate, Tomczak was sent to the Clinton, N.Y. facility, and in July 1993, transferred to Auburn. While the computer entries indicate a warrant had been lodged, neither Clinton nor Auburn had a record of the "hard copy," that is the warrant itself. Without that, no facility ever provided Tomczak with the forms necessary to process a speedy trial request until December 1995, when the proper forms were provided to him. Tomczak himself had made efforts since January 1992 to avail himself of the provisions of the IAD, but was told on several occasions by New York officials there was no warrant lodged.
Here, the state of New York, acting as an agent for the state of Connecticut, undertook to comply with the requirements of the IAD, but did so negligently. This defendant was entitled, under the provisions of the IAD, to be notified of this right to request a speedy trial promptly upon his conviction. A detainer was lodged but the defendant was not properly notified. Although CT Page 5656 he was aware that he had outstanding charges against him in Connecticut, he was not able to avail himself of the provisions of the IAD because the New York authorities erroneously informed him there was no detainer. Without a detainer, he could not get the necessary forms to proceed.
Secondly, is the defendant entitled, under the facts of thiscase, to have the charges dismissed?
The state's claim that the defendant did not take reasonable steps to resolve the problem is not persuasive. He wrote to the Tolland Superior Court, and was advised in 1992 that there was a warrant lodged. His efforts to get the necessary forms in New York were futile. The burden of notification is on the state and not vice versa. State v. Ogrinic, 29 Conn. App. 694 (1992).
There are four factors to consider in the determination of whether to dismiss the charges. They are found in Barker v.Wingo, 92 S.Ct. 2182 (1972) and Doggett v. U.S., 112 S.Ct. 2686
(1992). They are the length of the delay; the reason for the delay; the defendant's assertion of his right to a speedy trial; the prejudice to the defendant.
A. Length of Delay:
 The delay in this case ran from October 1991 to December 1995, a delay of over 4 years. This is an extraordinary delay and creates a presumptive prejudice to the defendant. Doggett v. U.S., 112 S.Ct. 2686, 2691 (1982).
B. Reason for Delay:
 As has been discussed herein, the delay was caused by the negligence of the custodial state. The Connecticut authorities were understandably under the assumption that its warrant was lodged as a detainer against Tomczak. There was no evidence that either state deliberately delayed notification. But the reason for the delay of over 4 years is the mishandling of the detainer by the New York department of corrections, thus this factor is weighed against the state.
C. Defendant's assertion of his right to a speedy trial:
 The IAD has specific procedural requirements for a defendant to follow. He is required to complete a particular CT Page 5657 form which he can only get from the corrections officials. Tomczak was told there was no detainer and could not get those forms. In early 1992, after being rebuffed by New York, he wrote to Connecticut, and was told a detainer was, in fact, lodged. He was getting conflicting information. This Court finds he made reasonable efforts to effect a speedy disposition of his case, but was thwarted by the confusion and carelessness of corrections officials. Despite his questioning neither state investigated very much in an effort to resolve an apparent problem, but rather advised the defendant there was, or was not a warrant lodged, depending on who was responding to his inquiry. Facility of communication is obviously much easier between inter-state agencies than between an inmate and those agencies, yet Tomczak appears to have done as much as the agencies in trying to resolve the matter. In short, he asserted his right to a speedy trial reasonably under the circumstances.
D. Prejudice:
 "Affirmative proof of particularized prejudice is not essential to every speedy trial claim" Doggett v. U.S., 112 S.Ct. 2686, 2692 (1992). Nonetheless, it is clear that the length of the delay increases the likelihood of prejudice presumptively occurring. In this case while there was no evidence of any particular prejudice to the defendant (nor was any presumptive prejudice rebutted) a delay of some 50 months is a serious departure from IAD standards. That delay presumptively compromised the reliability of a trial. Witnesses' memories fade with passage of years and investigation becomes more difficult.
A review of cases examining this issue shows that Courts have not strictly construed the IAD requirement. Where delays have occurred, Courts have generally been reluctant to dismiss a case because of inadvertence in either notifying the defendant or bringing him to trial, especially where there is no showing of actual prejudice. But if the statute is to have meaning, and if it is to effectuate its stated purpose of reducing uncertainties of prisoner treatment and rehabilitation, and to encourage the expeditious and orderly disposition of such charges then there must be some limitation as to when, and under what circumstances, violations should bar prosecution.
The four part balancing test discussed above guides us to CT Page 5658 that determination. After considering all of the evidence vis-a-vis these factors of length of delay, the reason for the delay, the defendants assertion of his right and the prejudice factors, this Court concludes the first 3 factors weight heavily against the state. Adding to that conclusion, the presumptive prejudice caused by the delay, this Court concludes the remedy should be a dismissal of the charges against William Tomczak.
The Motion to Dismiss is granted.
Klaczak, J.