STATE OF CONNECTICUT *v.* PATRICK S. WRIGHT
(AC 16011)

Lavery, Landau and Dupont, Js.

Argued September 30, 1997—officially released February 3, 1998

*Brian S. Karpe*, with whom, on the brief, were *Robert F. Field*, public defender, and *Richard L. Grant*, for the appellant (defendant).

*Robert J. Scheinblum*, assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *Devin T. Stilson*, assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The primary issue of this appeal is whether the testimony of a state's expert witness was tantamount to an opinion that answered the ultimate question for the jury, namely, whether the defendant was guilty of the possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277 (a) and, if so, whether the defendant is entitled to a new trial or a judgment of acquittal of that charge.

The defendant claims that there was insufficient evidence to establish guilt of possession of a narcotic substance with intent to sell, although he acknowledges that there was evidence to establish guilt of simple possession of a narcotic substance in violation of General Statutes § 21a-279. He seeks a judgment of acquittal of the crime of possession with intent to sell on the ground of insufficiency of the evidence.[1] In the event that we conclude that he is not entitled to a judgment of acquittal, he seeks a new trial, claiming that the introduction of opinion testimony on an ultimate ques-

---

[1] The defendant moved for a judgment of acquittal at the close of all of the evidence, which motion was denied by the trial court. The charge in this case, without objection by the defendant, included a charge on the lesser included offense of illegal possession of a narcotic substance. If a judgment of acquittal on the greater offense must be rendered, the case would have to be remanded to the trial court to reflect the conviction of the lesser offense and for resentencing in accordance with that conviction. See *State* v. *Carpenter*, 214 Conn. 77, 84–85, 570 A.2d 203 (1990), on appeal after remand, 220 Conn. 169, 595 A.2d 881 (1991), cert. denied, 502 U.S. 1034, 112 S. Ct. 877, 116 L. Ed. 2d 781 (1992).

tion to be resolved by the jury was impermissible and that its introduction more probably than not affected the result.

The testimony of which the defendant complains was given by Detective Mark Trohalis, an expert on narcotics trafficking. The defendant does not dispute that Trohalis is an expert. The colloquy at issue is as follows:

"Q. Viewing those items that are before you on that desk [the six 'snow folds' that had been in the possession of the defendant], does that indicate anything to you about the behavior of the person that had those?

"A. Yes, it does.

"Q. What does it indicate to you?

"A. That these packages were packaged for sale and packaged where a larger quantity was packaged at that time."

The first question to be resolved is whether the testimony in question was impermissible. Three Connecticut cases are pertinent. In *State* v. *Vilalastra*, 207 Conn. 35, 36–37, 540 A.2d 42 (1988), the defendant was also on trial for a violation of the crime of possession of a narcotic substance with intent to sell. The question asked of an expert witness in that case was as follows:

"Q. Would you be able to formulate an opinion based on your training and experience and the facts as I gave you, whether or not the items found . . . were possessed for either personal use or consumption or with the intent to sell and or dispense?

"A. My opinion is that this would be used for sale, not personal use."

The *Vilalastra* court held that the testimony was impermissible. The court stated that expert witnesses may testify that certain behavior was conduct similar to that of those engaged in selling drugs, or that in light

of the witness' personal observation of the defendant's conduct, it would appear that the defendant was engaged in sales of drugs, but that the state "may not ask an expert whether in his expert opinion a defendant possessed illegal drugs for sale or consumption." Id., 45. The defendant's conviction was upheld, however, because there was other evidence in the case, exclusive of the impermissible testimony, that could have caused the jury to find an intent to sell so that the improper admission more probably than not did not affect the outcome.

The second relevant case, *State* v. *Campbell*, 225 Conn 650, 657, 626 A.2d 287 (1993), held that it was improper to permit an expert witness for the state to testify "as to whether in his opinion the defendant possessed the drugs with the intent to sell or with the intent to use them personally." As was true in *Vilalastra*, the court held that the defendant was probably not harmed and was, therefore, not entitled to a new trial. Id., 658. The court buttressed its determination that the admission of the testimony was improper by citing General Statutes § 54-86i. Id., 656–57. That statute provides that "[n]o expert witness testifying with respect to the mental state . . . of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state . . . . constituting an element of the crime charged . . . . The ultimate issue as to whether the defendant was criminally responsible for the crime charged is a matter for the trier of fact alone."

In the case of *State* v. *Walton*, 227 Conn 32, 59–60, 630 A.2d 990 (1993), the question and answer were as follows:

"Q. Based on all of [your] training and experience, you observed what was on that table, how it was packaged, what was open, what was closed. Did you, based on all that training and experience, come to a conclusion as what had transpired to get those to the way they were?

"A. The white powder in the large white plastic bag was in the process of being packaged for distribution."

As was true in both *Vilalastra* and *Campbell*, the court held that although the testimony was improper, the defendant was not entitled to a new trial because it was more probable than not, in view of the other evidence, that the testimony did not affect the jury's finding of guilt.

It is difficult to draw a meaningful distinction between the forbidden testimony of *Walton* and the testimony in this case and we, therefore, hold that the testimony in this case was equally improper and that the jury should not have been allowed to consider it.

The next issue we must resolve is the consequence of the improper admission of the expert opinion. The improper admission of opinion testimony that answers a question that a jury should have resolved for itself is not of constitutional significance and is a type of evidentiary error. *State* v. *Vilalastra*, supra, 207 Conn. 46. If the testimony is deemed to have answered a question that was solely for the jury's determination, the burden is on the defendant to show that the admission more probably than not affected the outcome of the verdict. Id. If the defendant can show that the outcome was affected, the defendant is entitled to a new trial.

Before we determine whether the defendant is entitled to a new trial, we must first consider his claim that the evidence was insufficient to convict him of possession of a narcotic substance with intent to sell because if that claim is meritorious, all of his other claims are moot; see *State* v. *Munoz*, 233 Conn. 106, 110, 659 A.2d 683 (1995); and he is entitled to a judgment of acquittal on that charge rather than a new trial.

For the purpose of our review of the sufficiency of the evidence, we must consider all of the evidence presented to the trial court, including the improperly admitted opinion testimony. See *State* v. *Carey*, 228 Conn.

487, 495–96, 636 A.2d 840 (1994); *State* v. *Gray*, 200 Conn. 523, 535–39, 512 A.2d 217, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). "When the trial court erroneously admits evidence resulting in reversal . . . the State should not be precluded from retrial even though when such evidence is discounted there may be evidentiary insufficiency." (Internal quotation marks omitted.) *State* v. *Gray*, supra, 538; see also *Burks* v. *United States*, 437 U.S. 1, 15, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978) (incorrect reception or rejection of evidence is trial error that does not invoke double jeopardy clause). A reversal for trial error does not mean that the state has failed to prove its case but is a determination that a defendant was convicted in a defective process; *State* v. *Gray*, supra, 540; and, therefore, a claim of insufficiency of the evidence must be tested by including the evidence that is the subject of the evidentiary error. We, therefore, review all of the evidence in the present case, including the tainted opinion testimony, and compare it with the evidence in other cases in which the defendant was charged with the possession of narcotics with intent to sell, in order to determine whether the defendant should prevail on his insufficiency of the evidence claim.

In the present case, Detective David Arconti, Officer John Krupinsky and other members of the Danbury police department converged on an area known for the buying and selling of narcotics to serve an arrest warrant on someone other than the defendant. While there, Arconti saw a person, later identified as the defendant, walk to a parking lot and throw an object under a station wagon and then continue to walk toward Krupinsky. Krupinsky, who could not see the defendant from his position, was given a description of the defendant and ordered to detain him, which he did when the defendant came into view. Immediately after seeing the defendant throw the object, Arconti recovered a plastic

pill bottle from underneath the station wagon. The bottle contained six "snow folds," items commonly used to package cocaine. All of the six items were subsequently tested and found to contain cocaine in solid form, but no analysis was made to determine the percentage of purity of the cocaine.

Trohalis also testified, properly, to the fact that it is unlikely that a user of drugs would buy six folds, that the most common purchase of drugs costs between $20 and $40 dollars for two folds, that the six folds would cost $120 and that if a user spent $120, it would be for a bulk purchase, not six folds. He further testified that one person could consume six folds in a time period varying between one hour and two days. No evidence other than the bottle was seized from the defendant or found under the station wagon. There was no evidence that the defendant had in his possession any money, other drugs, a weapon, drug paraphernalia, a beeper, or records relating to drug transactions. Immediately prior to the defendant's throwing an object under the station wagon, he had been standing next to two people, but no conduct was observed to indicate that drugs were being sold.

We now consider whether the evidence was sufficient to convict the defendant of possession of a narcotic substance with intent to sell. The standard of review for challenges to the sufficiency of the evidence is well settled. The evidence is viewed in a light most favorable to sustaining the verdict and then it is determined whether the jury could have found, on the basis of the facts established and the inferences reasonably drawn from those facts, that the cumulative effect established guilt beyond a reasonable doubt. *State* v. *Conley*, 31 Conn. App. 548, 559, 627 A.2d 436, cert. denied, 227 Conn. 907, 632 A.2d 696 (1993). "Possession of narcotics in quantities ordinarily not associated with personal use is a factor on which a jury may reasonably rely

to infer intent to sell. . . . Our courts, however, have stopped short of declaring that this factor alone warrants an inference of intent." (Citations omitted.) Id., 560. If expert testimony has established that a defendant possessed an amount of drugs that was unusually large for personal use, a jury is entitled to credit the testimony as a factor in the analysis of whether the state has inferentially established intent to sell beyond a reasonable doubt. Id. If a defendant has no drug paraphernalia, it is reasonable to infer that he did not intend to use the drugs himself and that also may be factored into the jury's determination, as well as the way the drugs were packaged. Id., 560–61.

In view of the testimony that the most common purchase for users of drugs is only one or two folds, that it is not common for a user to buy as many as six folds, that drug sellers may have other quantities of drugs and money nearby and not on their person and that it was unlikely that a drug user would buy six folds for personal consumption, and considering the lack of any drug paraphernalia and the tainted opinion evidence; see *State* v. *Carey*, supra, 228 Conn. 495–97; *State* v. *Gray*, supra, 200 Conn. 535–39; the cumulative effect could have established guilt beyond a reasonable doubt. We conclude that the defendant, therefore, is not entitled to a judgment of acquittal.

We now turn to the question of whether the evidence of the opinion testimony more probably than not affected the outcome. Unlike in the cases of *Vilalastra*, *Walton* and *Campbell*, here there was no evidence of large amounts of cash in small denominations on the person of the defendant, nor were there extra plastic bags, or a very large amount of cocaine. There were no guns or weapons introduced into evidence, and the street value of the drugs was not great. There was no evidence of conduct by the defendant that was indicative of a drug sale.

In the three cases previously cited, because of overwhelming other evidence, the defendants could not establish that it was more probable than not that the improper ruling that allowed the expert to testify to his opinion that the defendant possessed the intent to sell affected the verdict. In the present case, the trial court stated that the case against the defendant on the element of intent "was not the strongest case that has been brought before the Connecticut courts in the sale of a narcotic substance." We agree with the trial judge. This case differs from the other cases cited because of the lack of other overwhelming evidence. We conclude that more probably than not, the opinion testimony affected the result. Accordingly, the judgment of conviction is reversed and we remand the case for a new trial.

Although our disposition of the previous issue requires a new trial, we will briefly consider the defendant's claim that the trial court improperly prevented him from cross-examining Krupinsky, a state's witness, and in disallowing the testimony of Captain Arthur Sullo, the chief of police of Danbury, with respect to motive, interest or bias. It is likely that this claim will recur at retrial. Certain additional facts are necessary for a proper resolution of this issue.

Krupinsky, a ten year veteran of the Danbury police department, was assigned to the tactical narcotics team at the time of the defendant's arrest. Tactical narcotics is a special unit of the Danbury police department designed to combat street drug sales. On cross-examination, the defendant attempted to question Krupinsky regarding the funding sources for that unit. Specifically, the defendant proposed to show that Krupinsky had an ulterior motive for arresting the defendant and testifying for the state because the state and federal funding of the tactical narcotics team is dependent on the number of arrests made by the unit. The trial court excused

the jury and permitted the defendant to establish relevance and foundation by cross-examining Krupinsky outside of the presence of the jury.

After the trial court permitted the defendant to make his offer of proof, through both the cross-examination of Krupinsky and the introduction of the testimony of Sullo, it considered the defendant's claim that the officers had an ulterior motive for their testimony. The court concluded that the defendant failed to establish how the funding of the tactical narcotics team was relevant to Krupinsky's motive, bias or interest, and, thus, properly excluded the evidence as irrelevant.[2]

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[2] Krupinsky testified that although he was aware that the tactical narcotics team was partially funded by state grants, he was not in charge of keeping statistics of arrests or providing those statistics to the state. There was no testimony that the amount of money received by the unit was dependent on the number of arrests. Furthermore, no evidence was adduced that Krupinsky distorted his testimony on cross-examination or that he would have gained personally from the defendant's conviction. To the contrary, Krupinsky's testimony established that his job was secure with the police department and was totally unrelated to the funding of the tactical narcotics team.