STATE OF CONNECTICUT *v.* DOUGLAS REID
(AC 29933)

Gruendel, Robinson and Borden, Js.

---

Argued April 8—officially released August 24, 2010

*Elizabeth M. Inkster*, senior assistant public defender, with whom was *Peter G. Billings*, deputy assistant public defender, for the appellant (defendant).

*Mitchell S. Brody,* senior assistant state's attorney, with whom, on the brief, were *John C. Smriga,* state's attorney, and *Marc R. Durso,* assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Douglas Reid, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a), possession of narcotics with intent to sell within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b) and possession of narcotics in violation of General Statutes § 21a-279 (a). On appeal, the defendant claims that (1) the trial court improperly permitted expert testimony on an ultimate issue of fact, (2) the evidence adduced at trial was insufficient to sustain his conviction of possession of narcotics with intent to sell within 1500 feet of a public housing project and (3) the court improperly instructed the jury on the intent element of §§ 21a-277 (a) and 21a-278a (b). We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the afternoon of November 22, 2006, Officers William J. Simpson and Elson Morales of the Bridgeport police department conducted a foot patrol in Marina Village, a federally subsidized housing project. At approximately 4 p.m., they proceeded to the corner of Columbia Street and Johnson Street, a location of frequent narcotic transactions. As the officers entered an adjacent parking lot, they encountered several individuals and decided to conduct a "stop and talk," known also as a warrant check. When they approached, the defendant backed away. Despite their instruction that the defendant come back, he resisted. As the other individuals in the parking lot moved forward, the officers witnessed the defendant remove a plastic bag from his pocket, which he tossed to the ground.

Upon recovering the plastic bag, the officers observed that it contained "packaged street level" narcotics. The bag contained ten glassine folds bound by a rubber band. As a result, the officers placed the defendant under arrest and conducted a search incident thereto, which produced four blue glassine folds in his hand and three white glassine folds in his pocket. Field tests performed on samples from the plastic bag recovered from the ground and the three white glassine folds confirmed the presence of narcotics, namely, heroin. At the same time, the four blue glassine folds tested negative. Neither money nor drug paraphernalia were found on the defendant.

The defendant's criminal prosecution followed. After a trial, the jury found the defendant guilty of possession of narcotics with intent to sell, possession of narcotics with intent to sell within 1500 feet of a public housing project and possession of narcotics. The court rendered judgment accordingly and thereafter sentenced him to a total effective term of twelve years incarceration and five years of special parole. From that judgment, the defendant appeals.

## I

The defendant first claims that the court abused its discretion by permitting expert testimony on an ultimate issue of fact.[1] Specifically, he claims that Simpson improperly opined on whether the defendant possessed the narcotics with the intent to sell.[2] We disagree.

The portion of Simpson's testimony that is challenged on appeal is set forth in the following colloquy:

"[The Prosecutor]: . . . Now, based on your training and experience, everything you've gone through and all

---

[1] At trial, counsel for the defendant distinctly raised the claim he now pursues on appeal.

[2] The court qualified Simpson as an expert, a determination with which the defendant does not quarrel on appeal.

the arrests you've made, when you find somebody that's in possession of some suspected narcotics that came back positive in the field test, and some suspected narcotics that came back negative in a field test, what is that indicative of?

"[The Witness]: Well, it depends on . . . the quantity that he has on him, the packaging; but usually, if somebody's [going to] sell burn bags—that's what you call them, burn bags—it's usually for selling.

"[The Prosecutor]: And what is a burn bag, if you can just explain that?

"[The Witness]: Well, a burn bag is a misrepresentation . . . of a drug, like . . . well, I'll use crack, for instance. That's boiled down cocaine. If it's a misrepresentation, they might use soap, baking soda. Basically, the intent is to sell an individual who thinks it's narcotics; it's really not narcotics . . . .

"[The Prosecutor]: Now . . . when you've made arrests of sellers before, what is the typical quantity in packaging . . . that's usually seized?

"[The Witness]: It varies. It varies off of, I mean, his actions. Just, basically, the quantity of—depending on what the drug is, say five or more, I mean, depending on where they're packaged . . . how they're held. I mean, there's a lot that goes into it. . . .

"[The Prosecutor]: Well, let me ask you this. When you . . . arrest a buyer or a user . . . suspected user . . . how much narcotics are usually found on them?

"[The Witness]: Probably a slab [which] is another street term for crack or cocaine; probably one or two depending on how much money they had.

"[The Prosecutor]: So, once again . . . if you . . . had an arrest of somebody who had narcotics that are both positive and negative, and were packaged bundled

in five or more as you've just testified to, what would that be indicative to? Would that be indicative of a seller or user?

"[Defense Counsel]: Objection, Your Honor.

"The Court: All right.

"[Defense Counsel]: That's speculation, and it goes to the ultimate issue.

"The Court: All right. You claim it?

"[The Prosecutor]: Yes, I do.

"The Court: Okay, just briefly.

"[The Prosecutor]: Your Honor, [under *State* v. *Nelson*, 17 Conn. App. 556, 555 A.2d 426 (1989), and *State* v. *Vilalastra*, 207 Conn. 35, 540 A.2d 42 (1988), it] does not go to the ultimate issue. The officer . . . is not testifying as to the defendant's intent or the defendant's intent in this case. He's testifying, basically, on his training and experience in the arrest that he made, and those cases are directly on point.

"The Court: Anything further?

"[Defense Counsel]: No, Your Honor.

"The Court: All right, overruled. . . .

"[The Prosecutor]: Once again, someone who is arrested by yourself in the past that's found with narcotics that tested positive, suspected narcotics that tested negative bundled in five or more, as you testified, what is that indicative [of] to you?

"[The Witness]: An intent to sell, like—the statute is with intent to sell.

"[The Prosecutor]: Okay.

"[The Witness]: So, someone who's trying to sell narcotics."

The issue before us is whether the court improperly admitted expert testimony on the ultimate question for the jury of whether the defendant possessed the narcotics with the intent to sell. "[T]he trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed." (Internal quotation marks omitted.) *State* v. *Perkins*, 271 Conn. 218, 264, 856 A.2d 917 (2004). That discretion extends to "expert testimony concerning the sale of illicit drugs." *State* v. *Vilalastra*, supra, 207 Conn. 45. Under Connecticut law, an expert witness "may testify that certain behavior by a defendant or his possession of particular items is conduct similar to that engaged in by the typical drug dealer." Id. At the same time, the state is forbidden from soliciting an expert's opinion on whether a particular defendant "possessed illegal drugs for sale or consumption." Id.; see also *State* v. *Campbell*, 225 Conn. 650, 656–57, 626 A.2d 287 (1993) (police detective could testify about patterns common to drug sales, but it was improper for him "to testify to his opinion on the ultimate fact of whether the defendant possessed the narcotics with the intent to sell").

In the present case, Simpson testified in response to a series of hypothetical questions based on his training and experience. The questions concerned prior arrests made by Simpson and referred to "somebody" or "someone"; they never referenced the defendant. See *State* v. *Abreu*, 34 Conn. App. 629, 633–34, 643 A.2d 871, cert. denied, 230 Conn. 915, 645 A.2d 1019 (1994). Similarly, Simpson's answers did not go beyond the scope of the questions, as evinced by his testimony that a hypothetical question indicated "*someone* who's trying to sell narcotics." (Emphasis added.) Simpson also testified as to the quantity of narcotics that a suspect may possess and the manner in which the narcotics may be

packaged, which plainly is permissible. See *State* v. *Vilalastra,* supra, 207 Conn. 42; *State* v. *Francis,* 90 Conn. App. 676, 682, 879 A.2d 457, cert. denied, 275 Conn. 925, 883 A.2d 1248 (2005); *State* v. *Ogrinc,* 29 Conn. App. 694, 699, 617 A.2d 924 (1992). His testimony is a quintessential example of appropriate testimony on the custom and practice of narcotics traffickers generally. *State* v. *Vilalastra,* supra, 45; *State* v. *Nelson,* supra, 17 Conn. App. 566. Simpson did not opine as to whether the narcotics recovered were possessed by the defendant for either personal use and consumption or with the intent to sell or dispense; cf. *State* v. *Vilalastra,* supra, 43; or whether the conduct of the defendant fit the custom and practice he described. See *State* v. *Walton,* 227 Conn. 32, 61, 630 A.2d 990 (1993). Rather, it properly was left to the jury to determine whether the actions of the defendant fit that description.

We conclude that the challenged testimony does not include an opinion on the ultimate fact of whether the defendant possessed the narcotics with the intent to sell. The court therefore did not abuse its discretion in admitting that testimony.

## II

The defendant next claims that the evidence adduced at trial was insufficient to sustain his conviction of possession of narcotics with intent to sell within 1500 feet of a public housing project. The defendant does not allege that the evidence was insufficient either to sustain his conviction of possession of narcotics with intent to sell in violation of § 21a-277 (a) or to establish that Marina Village is a public housing project. Rather, his precise claim is that there was insufficient evidence from which the jury could have concluded beyond a reasonable doubt that he possessed the specific intent to sell narcotics at a particular location, which the

defendant agrees is within 1500 feet of Marina Village. We are not persuaded.

"[T]he [d]ue [p]rocess [c]lause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The standard of review for a sufficiency of the evidence claim employs a two part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support [its] verdict." (Internal quotation marks omitted.) *State* v. *Niemeyer*, 258 Conn. 510, 517, 782 A.2d 658 (2001).

It is axiomatic that "the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating

evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [jury] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury] would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [jury's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 402–403, 902 A.2d 1044 (2006). With that standard in mind, we turn to the defendant's claim.

Section 21a-278a (b) provides in relevant part: "Any person who violates section 21a-277 or 21a-278 by manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising . . . a public housing project . . . shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section 21a-277 or 21a-278. To constitute a violation of this subsection, an act of transporting or possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand five hundred feet of, the real property comprising . . . a public housing project

. . . . For the purposes of this subsection, 'public housing project' means dwelling accommodations operated as a state or federally subsidized multifamily housing project by a housing authority, nonprofit corporation or municipal developer, as defined in section 8-39, pursuant to chapter 128 or by the Connecticut Housing Authority pursuant to chapter 129." Our Supreme Court has held that a conviction under § 21a-278a (b) requires, as an element of the offense, an intent to sell or dispense narcotics at a location that is geographically within 1500 feet of a public housing project. See *State* v. *Denby*, 235 Conn. 477, 482, 668 A.2d 682 (1995). The state need not prove that a defendant possessed knowledge that the location at issue was within that zone. Id.

It is well settled that "[t]he question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct. . . . [W]hether such an inference should be drawn is properly a question for the jury to decide." (Internal quotation marks omitted.) *State* v. *Downey*, 45 Conn. App. 148, 154, 694 A.2d 1367, cert. denied, 242 Conn. 909, 697 A.2d 367 (1997). In addition, "[i]ntent may . . . be inferred from the surrounding circumstances [and] the events leading up to and immediately following [an] incident." (Internal quotation marks omitted.) *State* v. *Saez*, 115 Conn. App. 295, 303, 972 A.2d 277, cert. denied, 293 Conn. 909, 978 A.2d 1113 (2009).

In the present case, Simpson and Morales encountered the defendant in a parking lot adjacent to the intersection of Columbia Street and Johnson Street.

The jury was presented with evidence that this location was an "open air drug market" where drug transactions frequently transpired. Simpson testified that the location was a "hot spot" for drug dealing because "it's kind of like a freeway. People . . . are able to drive in, meet up there, and they have . . . three routes of escape from there. . . . [T]hey can go up Johnson [Street], they go down Project [Street] and then go back down . . . that other street leading up to it. . . . [T]hat parking lot [where the officers observed the defendant] is one of the main problems that we have in Marina Village." Morales similarly testified that Marina Village was a "high crime area" and a center of the "drug trade . . . heroin, specifically. There are multiple dealers of heroin in the Marina Village." Evidence of the defendant's presence at such a location suggests an intent to sell or dispense narcotics at a location that is geographically within 1500 feet of a public housing project. See *State* v. *Francis*, supra, 90 Conn. App. 682 (noting evidence that defendant was observed in "area known to be a high trafficking area for narcotics"); *State* v. *Jeffreys*, 78 Conn. App. 659, 676, 828 A.2d 659 ("the defendant was observed loitering in an area known for commercial drug activity"), cert. denied, 266 Conn. 913, 833 A.2d 465 (2003); *State* v. *Ogrinc*, supra, 29 Conn. App. 699 ("[e]vidence demonstrating that the defendant was present in a known drug trafficking area further suggests an intent to sell").

Notably, the defendant does not dispute that he was in possession of narcotics at that location. See *State* v. *Jeffreys*, supra, 78 Conn. App. 676. The jury also was presented with evidence regarding the quantity of narcotics found in the defendant's possession and the manner in which they were packaged, both of which are probative of his intent to sell. See *State* v. *Ogrinc*, supra, 29 Conn. App. 699. The officers witnessed the defendant attempt to discard a plastic bag containing ten glassine

folds bound by a rubber band and found four blue glassine folds in his hand and three white glassine folds in his pocket. At trial, Simpson offered his expert opinion that a narcotics user usually will be found with only one or two folds of narcotics on his person. See *State v. Wright*, 47 Conn. App. 559, 566, 707 A.2d 295 (evidence that "the most common purchase for users of drugs is only one or two folds, that it is not common for a user to buy as many as six folds" indicated intent to sell), cert. denied, 244 Conn. 917, 714 A.2d 8 (1998). Similarly, Morales testified on the basis of his training and experience that the quantity of narcotics found and the packaging thereof was indicative of whether the possessor was a seller or user of narcotics. Morales explained that sellers usually package narcotics "in a bundle, ten folds apiece in a rubber band," noting that sellers usually possess "more than ten folds." Morales further testified that buyers generally possess only one or two folds that are not "rubber-banded and put together."

In addition, the jury was presented with evidence that the four blue glassine folds found in the defendant's hand tested negative for narcotics. In his expert testimony, Simpson detailed the usage by sellers of "burn bags." See, e.g., *United States* v. *Derr*, 990 F.2d 1330, 1332 (D.C. Cir. 1993) (pouches containing fake narcotics commonly known as burn bags); *State* v. *Johnson*, 21 Conn. App. 291, 295, 573 A.2d 1218 (1990) (describing burn bags as "phony drugs"). Simpson testified that on numerous occasions he had made arrests in which some of the suspected narcotics recovered tested positive for narcotics and some tested negative. He explained that such instances often involve "burn bags," which he defined as "a misrepresentation . . . of a drug, like . . . well, I'll use crack, for instance. That's boiled down cocaine. If it's a misrepresentation, they might use soap, baking soda. Basically, the intent is to sell an individual

who thinks it's narcotics; it's really not narcotics
. . . ." On the basis of his training and experience, Simpson offered his expert opinion that the presence of burn bags indicates an intent to sell. Morales likewise testified that he had been involved in numerous arrests in which one portion of the suspected narcotics tested positive for narcotics and the other tested negative. Morales opined that a suspect in such an instance likely is "a person that's definitely trying to burn someone. . . . [I]f it's a product that's not a narcotic . . . they're not [going to] obviously take it as a user. They would want to try to make money off of it and burn some buyers." That evidence supports the inference that the defendant intended to sell narcotics in the Marina Village parking lot.

In addition, evidence was before the jury that no drug paraphernalia was found on the defendant. Morales testified that drug users usually keep drug paraphernalia on their persons and that heroin users tend to keep syringes on their person. "If a defendant has no drug paraphernalia, it is reasonable to infer that he did not intend to use the drugs himself and that also may be factored into the jury's determination . . . ." *State* v. *Wright*, supra, 47 Conn. App. 566; see also *State* v. *Jeffreys*, supra, 78 Conn. App. 676. Morales testified that the defendant "had no paraphernalia on him."

Also relevant is the defendant's behavior prior to his arrest. The officers first observed the defendant among a group of individuals at a location that was a hot spot for narcotics trafficking. The jury heard testimony from Morales that, as the officers approached the group, the defendant "started backing away, that's what [drew the attention of my partner and I, as we] started walking toward him, he backed off away from us." Simpson testified that when they instructed the defendant to come back, "everybody [else] moved forward [and] the defendant was the only one who was backing up . . . ."

The officers then witnessed the defendant toss to the ground the plastic bag containing ten glassine folds bound by a rubber band. Intent can be inferred from conduct; see *State* v. *Downey*, supra, 45 Conn. App. 154; and the jury properly could consider the aforementioned conduct in determining whether the defendant intended to sell narcotics in the Marina Village parking lot. As this court stated in *State* v. *Ogrinc*, supra, 29 Conn. App. 700, "the defendant's conduct was incriminating. When the defendant observed the police cruiser he warned other drug dealers of its presence, he immediately turned away from the cruiser, and he attempted to conceal the heroin he held in his left hand before tossing it underneath the car." The jury in this case similarly could have found the defendant's conduct in the parking lot incriminating.

Finally, we note that it is undisputed that the defendant was at the geographical location at issue for an extended period of time on the day of his arrest. As part of his defense, the defendant presented the testimony of Willie Everett, a resident of Marina Village. Everett testified that he was working on a vehicle in the parking lot adjacent to the intersection of Columbia Street and Johnson Street on the afternoon of November 22, 2006. On direct examination, Everett testified that the defendant had been assisting him at that location that day, stating that "[w]e had been there a while that day. We had been out there for a couple hours." As a result, the present case is distinguishable from the recent decision of this court in *State* v. *Lewis*, 113 Conn. App. 731, 967 A.2d 618, cert. granted, 292 Conn. 906, 973 A.2d 105 (2009). In *Lewis*, the majority recognized that "there was evidence indicating an intent to sell." Id., 748. It continued: "The evidence presented in this case, however, did not raise a permissible inference of an intent to sell at the specific location where the defendant was arrested. When stopped by the police, the defendant

was on his bicycle in the neighborhood in which he lived. The police did not observe him engage in any activity consistent with immediate drug sales but, rather, stopped him because he resembled the description of a robbery suspect. There was no evidence that the defendant was in the location at issue for any length of time sufficient to support an inference that he was doing more than passing through. The police officers who were dispatched to the area in response to a robbery complaint apprehended the defendant and [a companion] virtually immediately upon seeing him. Although there is evidence, such as the quantity of drugs found on his person and the manner of their packaging, that supports an inference of an intent to sell, the record is devoid of any direct or circumstantial evidence from which the inference of intent to sell at the place of apprehension can permissibly be drawn." Id., 748–49.

By contrast, the jury in the present case was presented with undisputed evidence, which the defendant offered at trial, establishing his presence at the location in question for an extended period of time. On that evidence, the jury could not reasonably conclude that the defendant was merely passing through the Marina Village parking lot but, rather, was at that location for hours. Furthermore, whereas the officers in *Lewis* "did not observe [the defendant] engage in any activity consistent with immediate drug sales" and "apprehended the defendant . . . virtually immediately upon seeing him"; id., 748; the officers in the present case apprehended the defendant only after witnessing him back away and toss a plastic bag to the ground that contained packaged narcotics at a location known to be a hot spot for narcotics trafficking.

Construing the evidence in the light most favorable to sustaining the verdict, the jury reasonably could have concluded that the cumulative force of the evidence established the defendant's intent to sell narcotics at the

Marina Village parking lot beyond a reasonable doubt. Accordingly, the defendant's claim of evidential insufficiency fails.

## III

The defendant also contends that the court improperly instructed the jury on the intent element of §§ 21a-277 (a) and 21a-278a (b), thereby diluting the standard of proof in violation of his right to due process under the federal and state constitutions.[3] The defendant did not preserve this claim at trial and now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[4] We review the defendant's claim because the record is adequate for review and the claim is of constitutional magnitude. See *State* v. *Peeler*, 271 Conn. 338, 369 n.29, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). On its merits, the claim fails to satisfy *Golding*'s third prong.

In reviewing claims of instructional impropriety, we are mindful that "[t]he principal function of a jury charge is to assist the jury in applying the law correctly to the facts which [the jury] might find to be established . . . . When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety . . . and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's

[3] As the defendant provides no independent state constitutional analysis, we confine our review to his claim under the federal constitution. See *State* v. *Wright*, 246 Conn. 132, 138, 716 A.2d 870 (1998).

[4] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party . . . . In this inquiry we focus on the substance of the charge rather than the form of what was said not only in light of the entire charge, but also within the context of the entire trial. . . . Moreover, as to unpreserved claims of constitutional error in jury instructions . . . under the third prong of *Golding*, [a] defendant may prevail . . . only if . . . it is reasonably possible that the jury was misled . . . ." (Internal quotation marks omitted.) *State* v. *Lawrence*, 282 Conn. 141, 179, 920 A.2d 236 (2007).

Both possession of narcotics with intent to sell in violation of § 21a-277 (a) and possession of narcotics with intent to sell within 1500 feet of a public housing project in violation of § 21a-278a (b) are specific intent crimes. See *State* v. *Denby*, supra, 235 Conn. 482; *State* v. *Lewis*, supra, 113 Conn. App. 737. The defendant maintains that although the court initially charged the jury on both specific and general intent, the court failed to instruct the jury as to the requisite specific intent with respect to the charged offenses, namely, the " 'to cause such result' " element of §§ 21a-277 (a) and 21a-278a (b). The state responds that the charge, read as a whole, properly instructed the jury on that element. We agree with the state.

In its charge to the jury, the court initially instructed the jury on intent as follows: "Intent relates to the condition of mind of the person who commits the act. It relates to that person's purpose in doing an act. Our statutes provide that a person acts intentionally with respect to a result described by the statute defining an offense when his conscious objective is to cause such result. A person acts intentionally with respect to conduct when his conscious objective is to engage in such conduct." Later in its charge, the court instructed the

jury on the intent element of §§ 21a-277 (a) and 21a-278a (b), stating in relevant part that "[t]he final element that the state must prove is that the defendant possessed the narcotic substance with intent to sell . . . . A person acts intentionally with respect to conduct described by a statute defining a crime when his conscious objective is to engage in such conduct. Intent is a conscious purpose to accomplish some objective. It is not necessary that any sale actually occurred. It is only necessary that a defendant intended that a sale would occur. In this regard, you should recall my prior charge on the meaning of intent."

We agree with the defendant that the court's isolated instruction that "[a] person acts intentionally with respect to conduct described by a statute defining a crime when his conscious objective is to engage in such conduct" was inappropriate in the context of §§ 21a-277 (a) and 21a-278a (b). At the same time, we review a challenged jury charge not in isolation, but in its entirety. *State* v. *Johnson*, 286 Conn. 427, 453, 944 A.2d 297, cert. denied, 555 U.S. 883, 129 S. Ct. 236, 172 L. Ed. 2d 144 (2008). As this court recently noted, "the giving of an overinclusive instruction, even more than one time during the course of a charge, is not dispositive of the issue of whether the instruction deprived the defendant of a fair trial; a reviewing court must carefully evaluate the instructions as a whole to gauge their likely effect on the jury in guiding it to a proper verdict in accordance with the law." *State* v. *Nance*, 119 Conn. App. 392, 412, 987 A.2d 376, cert. denied, 295 Conn. 924, 991 A.2d 569 (2010).

Earlier in its instructions to the jury, the court explained that certain offenses with which the defendant was charged concerned his intent to sell. Immediately following the aforementioned misstatement, the court instructed the jury that "[i]ntent is a conscious

purpose to accomplish some objective. It is not necessary that any sale actually occurred. It is only necessary that a defendant intended that a sale would occur." That instruction properly conveyed to the jury the specific intent element of §§ 21a-277 (a) and 21a-278a (b). Contra *State* v. *Lewis*, supra, 113 Conn. App. 738 (court instructed on general intent to "engage in such conduct" but "did not instruct the jury on specific intent" [internal quotation marks omitted]). In addition, the court's instruction on specific intent was augmented by the subsequent incorporation by reference of its "prior charge on the meaning of intent," which clarified the distinction between general and specific intent.

Viewed as a whole, the court's charge instructed the jury that the state was required to prove beyond a reasonable doubt that the defendant acted with the intent to sell narcotics on the afternoon of November 22, 2006. Because we cannot say that it is reasonably possible that the jury was misled, the defendant's claim fails to satisfy *Golding*'s third prong.

The judgment is affirmed.

In this opinion the other judges concurred.