STATE OF CONNECTICUT *v.* STANFORD D. FRANCIS
(AC 24668)

Schaller, Harper and Hennessy, Js.

Argued March 21—officially released August 9, 2005

*Louis S. Avitabile,* special public defender, for the appellant (defendant).

*Proloy K. Das,* deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Gail P. Hardy,* assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Stanford D. Francis, appeals from the judgment of conviction, rendered after a jury trial, of possession of one-half gram or more of cocaine in a freebase form with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (a), possession of narcotics with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b), two counts of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a) and operation of a drug factory in violation of General Statutes § 21a-277 (c). On appeal, the defendant claims that the trial court improperly (1) denied his motions for a judgment of acquittal, (2) refused to admit into evidence a prior inconsistent statement for substantive purposes, and (3) instructed the jury on motive and prior inconsistent statements. We disagree and affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On November 8, 2001, the investigative efforts of Timothy Jackson and Harold Setzer, two Waterbury police officers, led them to the Preston Terrace section of Waterbury in search of two men, the defendant and Sheldon Pomply, and a blue four door Jeep. The officers

saw a Jeep Cherokee fitting that description parked outside 26 Preston Terrace, an apartment building, and parked their vehicle so as to maintain observation of the Jeep. Minutes later, the defendant and Pomply emerged from the apartment building, entered the Jeep and drove off. The two officers followed the Jeep until it arrived at the intersection of Pine and Templeton Streets, a known drug trafficking area, where the defendant parked the Jeep. Jackson then saw the defendant exit the Jeep, remove what appeared to be a plastic bag from his jacket and place it in the gasoline tank area of the Jeep. The defendant then walked away from the Jeep while Pomply remained nearby the Jeep. At that time, the officers radioed for backup, approached the defendant and Pomply, and placed them in investigative detention. Tracey Canale, a detective with the Waterbury police department, arrived on the scene and was directed to look in the gasoline tank area of the Jeep. There, Canale found a plastic bag containing five partial plastic bags, each of which contained a white, rock-like substance that appeared to be crack cocaine.[1]

At this point, the defendant was placed under arrest. A preliminary search of the defendant's person revealed that he was in possession of $1750 in cash, which was layered in a manner that facilitated quick transactions. Inside the defendant's Jeep, the police discovered a number of tiny ziplock bags with an insignia on them.

Later that evening, Jackson returned to 26 Preston Terrace with Lawrence Smith, a detective with the Waterbury police department, and Michael Gugliotti, a sergeant with the Waterbury police department, in order to execute a search warrant for the defendant's residence, 26-5 Preston Terrace. During the search, the officers discovered numerous empty plastic bags with

---

[1] The substance field tested positive for the presence of cocaine, and later laboratory testing confirmed that the substance did in fact contain cocaine.

an insignia on them, dinner plates containing drug residue, two Pyrex measuring cups with drug residue, a pocket scale, a razor blade with drug residue, eleven separate plastic bags containing salt form cocaine and a piece of mail from the Government Employees Insurance Company addressed to the defendant at 26-5 Preston Terrace.

The defendant was charged with possession of narcotics with intent to sell one-half gram or more of cocaine in a freebase form by a person who is not drug dependent in violation of § 21a-278 (a), possession of narcotics with intent to sell within 1500 feet of a school in violation of § 21a-278a (b), two counts of possession of narcotics with intent to sell in violation of § 21a-277 (a) and operation of a drug factory in violation of § 21a-277 (c). He elected to be tried to the jury. At the close of the state's case, the defendant moved for a judgment of acquittal on the ground that there was insufficient evidence for the jury reasonably to conclude beyond a reasonable doubt that he intended to sell the cocaine at the intersection of Pine and Templeton Streets or that he possessed the narcotics or drug paraphernalia found at 26-5 Preston Terrace. The court denied the motions. At the close of evidence, the defendant renewed his motions for a judgment of acquittal, and the court again denied the motions. The jury found the defendant guilty as charged. Following the verdict, the defendant once again renewed his motions for a judgment of acquittal, which the court denied. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly denied his motions for a judgment of acquittal, which were presented at the end of the state's case-in-chief, at the close of evidence and following the verdict. We disagree.

Before analyzing the defendant's claim, we first set forth the appropriate standard of review. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State v. Jackson*, 257 Conn. 198, 204–205, 777 A.2d 591 (2001). "This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State v. McFarlane*, 88 Conn. App. 161, 168, 868 A.2d 130, cert. denied, 273 Conn. 931, 873 A.2d 999 (2005).

A

The defendant first claims that there was insufficient evidence for the jury to convict him of possession of narcotics with intent to sell within 1500 feet of a school in violation of § 21a-278a (b). More specifically, he argues that there was insufficient evidence that he intended to sell the cocaine at the intersection of Pine and Templeton Streets. We disagree.

"[T]he question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct. . . . [W]hether such an inference should be drawn is properly a question for the jury to decide." (Internal quotation marks omitted.) *State v. Downey*, 45 Conn.

App. 148, 154, 694 A.2d 1367, cert. denied, 242 Conn. 909, 697 A.2d 367 (1997).

"The quantity of narcotics found in the defendant's possession [is] probative of whether the defendant intended to sell the drugs. . . . Also indicative of the defendant's intent to sell narcotics is the manner in which the narcotics are packaged. . . . Evidence demonstrating that the defendant was present in a known drug trafficking area further suggests an intent to sell." (Citations omitted; internal quotation marks omitted.) *State* v. *Ogrinc*, 29 Conn. App. 694, 699, 617 A.2d 924 (1992).

In the present case, Jackson and Setzer observed the defendant park the Jeep near the corner of Pine and Templeton Streets,[2] an area known to be a high trafficking area for narcotics. Jackson observed the defendant place a plastic bag that contained narcotics behind the gasoline cap of his Jeep and walk away from the Jeep. According to Setzer, who was qualified as an expert witness, the quantity of narcotics found was consistent with the defendant being a midlevel narcotics dealer who would supply narcotics to the lower end street dealers for sale purposes. Setzer also testified that the tiny ziplock bags found are used frequently by street level dealers to package cocaine. He testified that the fact that the defendant was in possession of $1750 in cash was indicative of his role as a drug dealer and that the money he was carrying was layered in a manner that allowed for quick transactions. Most compelling, however, was Setzer's expert testimony that the fact that the defendant concealed the narcotics behind the Jeep's gasoline cap and walked away was consistent with drug sale activity. Setzer testified that drug dealers

---

[2] Stephen Santovasi, a geographic information systems technician for the city of Waterbury, testified that the intersection of Pine and Templeton Streets is within 1500 feet of the Driggs School, a public elementary school.

often will stash their drugs in a hidden location so that if they are stopped by the police, they can claim that they are not in possession of drugs.

The defendant argues that it was pure speculation for the jury to conclude that he intended to sell the narcotics at the corner of Pine and Templeton Streets. Construing the evidence in the light most favorable to sustaining the verdict, however, the jury reasonably could have concluded that the cumulative force of the evidence established the defendant's intent to sell the narcotics at that location beyond a reasonable doubt.

B

The defendant next claims that there was insufficient evidence for the jury to convict him of possession of narcotics with intent to sell in violation of § 21a-277 (a) and operation of a drug factory in violation of § 21a-277 (c) stemming from the seizure of contraband pursuant to the search warrant issued for 26-5 Preston Terrace. He argues that there was insufficient evidence that he was in possession of the cocaine or drug paraphernalia found in 26-5 Preston Terrace to sustain the conviction on those counts. We disagree.

"In order to prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it." (Internal quotation marks omitted.) *State* v. *Polanco*, 69 Conn. App. 169, 176, 797 A.2d 523 (2002). Where, as in the present case, the cocaine and drug paraphernalia were not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. "One factor that may be considered in determining whether

a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found." (Internal quotation marks omitted.) Id.

Here, because the defendant was not present at 26-5 Preston Terrace at the time the search warrant was executed, the state proceeded on the theory of constructive possession, presenting evidence that the defendant was in possession of the premises where the cocaine and drug paraphernalia were found.[3] To support that theory, the state introduced a piece of mail from the Government Employees Insurance Company addressed to the defendant at 26-5 Preston Terrace that was seized during the search of the apartment. Additionally, the state introduced the defendant's motor vehicle registration for his Jeep, which was seen parked outside the apartment building the evening of the search and which confirmed his residence at 26-5 Preston Terrace. Finally, there was the testimony of Jackson and Setzer that the defendant was seen exiting the apartment building that evening.

Construing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have inferred from the evidence presented that the defendant was in possession of 26-5 Preston Terrace and, as a result, in constructive possession of the cocaine and drug paraphernalia found therein. Accordingly, the defendant's insufficiency claim must fail.

---

[3] Although the defendant in his brief cites the doctrine of nonexclusive possession, he argues that there was not sufficient evidence to prove that he was in possession of the apartment, either exclusively or with another person. The doctrine of nonexclusive possession applies to "circumstances where the defendant has possession of the premises along with at least one other individual." *State* v. *Williams*, 258 Conn. 1, 11, 778 A.2d 186 (2001). The defendant's reliance on that doctrine, therefore, is misplaced.

## II

The defendant next claims that the court improperly refused to allow a portion of Jackson's police report to be admitted into evidence as a full exhibit.[4] We disagree.

"In *State* v. *Whelan*, [200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986)], our Supreme Court adopted the rule allowing the substantive use of a prior inconsistent statement if: (1) the statement is in writing; (2) it is signed by the declarant; (3) the declarant has personal knowledge of the facts set forth in the statement; and (4) the declarant testifies at trial and is subject to cross-examination. . . . A *Whelan* claim is *evidentiary* in nature and, accordingly, the defendant bears the burden of establishing that the trial court's erroneous ruling was harmful to him in that it probably affected the outcome of the trial. . . . The admissibility of evidence, including the admissibility of a prior inconsistent statement pursuant to *Whelan*, is a matter within the wide discretion of the trial court. . . . On appeal, the exercise of that discretion will not be disturbed except on a showing that it has been abused." (Emphasis in original; internal quotation marks omitted.) *State* v. *Marshall*, 87 Conn. App. 592, 597, 867 A.2d 57, cert. denied, 273 Conn. 925, 871 A.2d 1032 (2005).

In the present case we need not analyze the propriety of the court's refusal to admit the statement under *Whelan* because even if we were to assume that the court's ruling was erroneous, the defendant is unable to show that the court's ruling probably affected the outcome of the trial. The sole difference between Jack-

---

[4] The defendant sought to introduce the portion of Jackson's police report that described the persons who were present at the time of the arrest and their respective locations prior to the arrest as a full exhibit pursuant to *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

son's testimony at trial and the statement contained in his report is that the report omitted the presence of Dashona Lamar, a witness to the arrest. At trial, Jackson testified that Lamar was present at the time of the arrest, but that he had determined that she was not involved in the defendant's activities and, as such, was not relevant to the report. Jackson's testimony at trial was consistent with the testimony of the defendant's witnesses, and the defendant was allowed to cross-examine Jackson as to the inconsistency. During the defendant's closing argument, he again highlighted the difference between Jackson's report and his trial testimony. At oral argument before this court, the defendant admitted that the sole limitation he encountered as a result of the court's refusal to admit the statement as a full exhibit was that he was precluded from showing the report to the jury during closing argument. We therefore cannot conclude that the court's refusal to admit the report as a full exhibit likely affected the outcome of the trial.

### III

The defendant finally claims that the court's jury instructions on inconsistent statements and motive were improper. We are not persuaded.

"When reviewing a constitutional challenge to the trial court's instructions, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . It is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any

part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Whether a charge is possibly misleading depends on the substance rather than the form of what is said." (Citations omitted; internal quotation marks omitted.) *State* v. *Jenkins*, 88 Conn. App. 762, 771, 872 A.2d 469 (2005).

A

The defendant first argues that the court's instruction on inconsistent statements unfairly aided the state. We disagree.

The defendant contends that the court's charge on prior inconsistent statements[5] was modeled on J. Pellegrino, Connecticut Selected Jury Instructions: Criminal (3d Ed. 2001) § 2.13, p. 46,[6] yet it contained certain

---

[5] The court's charge on prior inconsistent statements was as follows: "Now, the type of evidence that may be present in this case is the introduction of evidence inconsistent with the trial testimony of certain witnesses. Generally, in the case of a witness who is not a party to an action, someone other than the defendant, evidence of a statement made out of court, whether written or oral, that is inconsistent with that person's testimony on the [witness] stand, is admitted not to prove the truth of the facts contained in the statement, but only as evidence of conduct inconsistent with the testimony on the [witness] stand. You should consider such evidence, therefore, as you would any other evidence of inconsistent conduct in determining the weight to be given to the witness' testimony on the [witness] stand. On the other hand, if you find a reasonable explanation for such inconsistency, you may disregard the evidence of inconsistent statement."

[6] J. Pellegrino, supra, § 2.13, provides: "A type of evidence that is present in this case is the introduction of evidence inconsistent with the trial testimony of the witness . . . . Generally, in the case of a witness who is not a party to an action, that is, someone other than the defendant, evidence of a statement made out of court, whether written or oral, that is inconsistent with his testimony on the stand is admitted not to prove the truth of the facts contained in the statement but only as evidence of conduct inconsistent with his testimony on the stand. You should consider such evidence, therefore, as you would any other evidence of inconsistent conduct in determining the weight to be given to the witness' testimony on the stand."

deviations that unfairly aided the state. The state counters that the charge in fact tracks D. Borden & L. Orland, 5 Connecticut Practice Series: Connecticut Criminal Jury Instructions (1986) § 3.5, pp. 74–75.[7] Our comparison of the court's charge to the model charges cited by the parties leads us to conclude that the court's charge tracks the Borden and Orland instruction nearly word for word. The only discrepancy between the court's charge and the model charge is the court's use of the phrase "may be present" rather than "is present" in reference to the inconsistent statement. We note, however, that "the court is not required to give a specific charge concerning [inconsistent] statements, at least where the inconsistencies are not substantial and do not relate to a material matter." (Internal quotation marks omitted.) *State* v. *Herring*, 55 Conn. App. 522, 526, 739 A.2d 1290 (1999), cert. denied, 252 Conn. 941, 747 A.2d 521 (2000). Because we conclude that the charge on inconsistent statements was correct in law, adapted to the issues and sufficient for the guidance of the jury, the defendant's argument fails. See *State* v. *Jenkins*, supra, 88 Conn. App. 771.

B

The defendant finally argues that the court's instruction on motive improperly lessened the state's burden of proof because the nature of the crime of possession

[7] D. Borden & L. Orland, supra, § 3.5, provides in relevant part: "A type of evidence that is present in this case is the introduction of inconsistent statements. In the case of a witness who is not a party to an action, that is, who is not the defendant in this case, evidence of statements made out of court, whether written or oral, inconsistent with his testimony on the stand, is admitted not to prove the truth of the facts contained in the statement, but as evidence of conduct inconsistent with his testimony on the stand. You should consider such evidence, therefore, as you would any other evidence of inconsistent conduct in determining the weight to be given to the witness' testimony on the stand. On the other hand, if you find a reasonable explanation for such inconsistency, you may disregard the evidence of inconsistent statements."

with intent to sell contains an inherent motive to make money. Again, we are not persuaded.

As previously stated, "[w]hen reviewing a constitutional challenge to the trial court's instructions, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury." (Internal quotation marks omitted.) Id. The court's charge on motive was fair and balanced.[8] The defendant argues that because the motive to sell drugs, i.e., to make money, is so obvious, it unfairly diluted the state's burden of proof. The obvious nature of the motive to sell drugs, however, persuades us that the charge was unlikely to have misled the jury. The court instructed the jury on the defendant's presumption of innocence, the state's burden of proof and that

[8] The court's charge on motive was as follows: "I want to speak to you just a moment about motive. Now, the law does not require that the state in a criminal case prove a motive. That is, it is not necessary for the state to prove what reason an accused person had for committing the crime charged, what motivated him to do it. Recognizing the fact that crimes are generally committed for some motive, evidence tending to show the existence of a motive is admissible and may be evidence tending to prove the guilt of an accused person if it appears that he has a motive.

"Now, in the same manner, in any case in which there appears no adequate motive on the part of the particular accused to commit the crime, that fact may tend to raise a reasonable doubt as to the guilt of that accused. Whatever motivates a person, however, rests solely in that person's mind. No one else can look into his mind and see what is there. Whatever was in his mind must be inferred from his conduct in the light of the surrounding circumstances. You are entitled and, indeed, it is your duty to draw such inferences from a person's conduct as are reasonable. You should examine the conduct of an accused in the light of the surrounding circumstances and, knowing how the human mind ordinarily operates, endeavor to determine whether, [on the basis of] all of the evidence, it can reasonably be inferred that the accused did have a motive to commit the crime. If the existence of a motive can be reasonably inferred or found, that may be evidence tending to prove his guilt. If no motive can be inferred or found, that may tend to raise a reasonable doubt as to the guilt of the accused or may not raise such a doubt. If the absence of an apparent motive does not raise a reasonable doubt that the accused is guilty, then the mere fact that the state has been unable to prove what the motive of the accused actually was does not prevent you from returning a verdict of guilty."

the jury could not use the information to draw any inference of guilt from the defendant's having been arrested and charged with crimes. Reviewing the jury charge as a whole, we cannot conclude that a reasonable possibility exists that the court's instruction on motive misled the jury.

The judgment is affirmed.

In this opinion the other judges concurred.