STATE OF CONNECTICUT *v.* DEMETRICE L. LEWIS
(AC 28791)

Bishop, Harper and Beach, Js.

Argued November 13, 2008—officially released April 21, 2009

*Pamela S. Nagy*, special public defender, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Brian J. Leslie*, assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Demetrice L. Lewis, appeals from the judgment of conviction, rendered after

a jury trial, of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of narcotics with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b), possession of drug paraphernalia with intent to use in violation of General Statutes § 21a-267 (a) and possession of drug paraphernalia with intent to use within 1500 feet of a school in violation of General Statutes § 21a-267 (c). On appeal, the defendant claims that (1) the trial court improperly instructed the jury by failing to define the specific intent element on all charges[1] and (2) there was insufficient evidence to support his conviction of the charges of possession of narcotics with intent to sell within 1500 feet of a school and possession of drug paraphernalia with intent to use within 1500 feet of a school. We agree with the defendant on both claims and reverse the judgment of the trial court.

The jury reasonably could have found the following facts. On June 3, 2005, at approximately 8:24 p.m., officers of the New Haven police department, including Luis Rivera, were dispatched to the intersection of North Frontage Road and Orchard Street after having received complaints of a robbery with a weapon at that location. The robbery suspects were described as three seventeen to eighteen year old men, one wearing a gray hooded sweatshirt and white "uptown" sneakers, and the other two wearing black hooded sweatshirts and blue jeans. In the area of 49 Waverly Street, Rivera and another officer stopped and detained the defendant, who was riding a bicycle and wearing dark clothing, and Joshua Williams, who was walking and wearing a

[1] The defendant also claims that the court improperly instructed the jury on possession of narcotics with intent to sell within 1500 feet of a school and possession of drug paraphernalia with intent to use within 1500 feet of a school by omitting essential elements of the those crimes from its instructions. In view of our disposition in this case, we need not resolve this issue.

gray hooded sweatshirt. Rivera stopped Williams and the other officer stopped the defendant, who had started to pedal his bicycle away as Williams was being detained.

Rivera conducted a warrant check on the defendant and found that there was an active warrant for his arrest. Rivera placed the defendant under arrest and conducted a thorough patdown of his person. Rivera discovered a clear sandwich bag in the defendant's pocket within which there were nineteen Ziploc bags, each containing a white, rock like substance, which a field test revealed to be crack cocaine. Rivera also found $116 in the defendant's front pocket, $160 in another pocket within the front pocket and $600 in his rear pocket. The money was in denominations of twenty, ten, five and one dollar bills. In the defendant's rear pocket, Rivera also found a razor blade and a paper bag containing medium and small Ziploc bags. Thereafter, the defendant was charged with possession of narcotics with intent to sell by a person who is not drug-dependent, possession of narcotics with intent to sell within 1500 feet of a school, possession of drug paraphernalia with intent to use and possession of drug paraphernalia with intent to use within 1500 feet of a school.

At trial, Michael Wuchek, a detective with the New Haven police department, testified as an expert witness on the street level sale of narcotics. He opined that the quantity of narcotics, the packaging of the narcotics, the empty bags, the razor blade and the small denominations of money found in the defendant's pockets were consistent with the street level sale of $10 bags of crack cocaine. Wuchek also testified that street level dealers often work in teams at a specific location, that a lookout riding on a bike commonly would be employed during a street level sale to identify customers or the police

and that street level dealers typically would attempt to run away to avoid the police.

Anwar Houwari, a civil engineer and projects manager and record keeper in the engineering department of the city of New Haven, also testified. After examining an engineering map of the city of New Haven, Houwari determined that the distance between the Timothy Dwight School and 49 Waverly Street, where the defendant was stopped, was 1050 feet.

The defendant was found guilty by the jury of possession of narcotics with intent to sell by a person who is not drug-dependent, possession of narcotics with intent to sell within 1500 feet of a school, possession of drug paraphernalia with intent to use and possession of drug paraphernalia with intent to use within 1500 feet of a school. The defendant was sentenced to a total effective term of eighteen years incarceration, execution suspended after ten years, with four years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court's failure to instruct the jury on the specific intent element of possession of narcotics with intent to sell by a person who is not drug-dependent, possession of narcotics with intent to sell within 1500 feet of a school, possession of drug paraphernalia with intent to use and possession of drug paraphernalia with intent to use within 1500 feet of a school violated his right to due process under the fourteenth amendment to the United States constitution.[2] We agree.

[2] Although the defendant cited article first, § 8, of the constitution of Connecticut in his appellate brief, he noted that he was not claiming greater protection under the state constitution. See *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992).

On the issue of intent, the court instructed: "Now, intent. Intent relates to the condition of mind of the person who commits the act, his purpose in doing it. As defined by our statutes, a person acts intentionally with respect to conduct when his conscious objective is to engage in such conduct. What a person's intention has been is very largely a matter of inference. No witness can be expected to come here and testify that he looked into another person's mind and saw, therein, [that it] contained a certain intention." When instructing the jury on possession of narcotics with intent to sell by a person who is not drug-dependent and possession of drug paraphernalia with intent to use, the court referred back to its general instruction on intent. The court then instructed the jury that if it found the defendant guilty of those crimes and if it found he was within 1500 feet of a school when he possessed a narcotic substance with intent to sell and possessed drug paraphernalia with intent to use, then he also would be guilty of possession of narcotics with intent to sell within 1500 feet of a school and possession of drug paraphernalia with intent to use within 1500 feet of a school, respectively.

The defendant did not file a written request to charge with respect to intent and failed to object to the court's instructions. He now requests review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[3] The defendant's claim satisfies the first two prongs of *Golding* because the record is adequate for review and

[3] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

"[a]n improper instruction on an element of an offense . . . is of constitutional dimension." (Internal quotation marks omitted.) *State* v. *Austin*, 244 Conn. 226, 235, 710 A.2d 732 (1998). "Due process requires that the state establish beyond a reasonable doubt every essential fact necessary to establish the crime charged . . . including intent where intent is one of those elements." (Internal quotation marks omitted.) Id.

The defendant's claim also satisfies the third prong of *Golding* because it is clear from the record that a constitutional violation exists. The crimes at issue are all specific intent crimes. "In deciding whether a criminal statute requires general or specific intent, our Supreme Court regularly has invoked the following distinction. When the elements of a crime consist of a description of a particular act and a mental element not specific in nature, the only issue is whether the defendant intended to do the proscribed act. If he did so intend, he has the requisite general intent for culpability. When the elements of a crime include a defendant's intent to achieve some result additional to the act, the additional language distinguishes the crime from those of general intent and makes it one requiring a specific intent. . . . *State* v. *Bitting*, 162 Conn. 1, 5, 291 A.2d 240 (1971)." (Citations omitted; internal quotation marks omitted.) *State* v. *Nixon*, 32 Conn. App. 224, 249, 630 A.2d 74 (1993), aff'd, 231 Conn. 545, 651 A.2d 1264 (1995). Possession of narcotics with intent to sell by a person who is not drug-dependent in violation of § 21a-278 (b) and possession of narcotics with intent to sell within 1500 feet of a school in violation of § 21a-278a (b) both require a specific intent to sell. See *State* v. *Denby*, 235 Conn. 477, 482, 668 A.2d 682 (1995) (specific intent to sell essential element of § 21a-278a [b]). The clear language of § 21a-267 (a) and (c) indicate that those crimes require a specific intent to use drug paraphernalia. General Statutes § 21a-267 (a) ("[n]o person

shall . . . possess *with intent to use* drug paraphernalia" [emphasis added]); General Statutes § 21a-267 (c) (same); see also *State* v. *Brunori*, 22 Conn. App. 431, 435, 578 A.2d 139 (under § 21a-267 [a], state must prove defendant possessed drug paraphernalia with intent to use it), cert. denied, 216 Conn. 814, 580 A.2d 61 (1990).

The court, however, did not instruct the jury on specific intent. Rather, it instructed the jury that "a person acts intentionally with respect to conduct when his *conscious objective is to engage in such conduct.*" (Emphasis added.) Intent to engage in proscribed conduct is not sufficient.[4] "[I]t is improper for the trial court to read [the] entire statute [on intent] to a jury when the pleadings or the evidence support a violation of only a portion of the statute . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Austin*, supra, 244 Conn. 235. A fortiori, it is improper for a court to instruct only on the general intent portion of the statute on intent when an instruction on the specific intent portion is required. See *State* v. *Tedesco*, 175 Conn. 279, 291–92, 397 A.2d 1352 (1978) (failure to instruct on element of specific intent constituted reversible error).

Finally, the defendant's claim satisfies the fourth prong of *Golding* because the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. When reviewing a

---

[4] General Statutes § 53a-3 (11), which defines intent, provides that "[a] person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ." This statutory definition embraces both the specific intent and general intent. *State* v. *McColl*, 74 Conn. App. 545, 575, 813 A.2d 107, cert. denied, 262 Conn. 953, 818 A.2d 782 (2003). General intent involves an intent to "engage in conduct described by a statute defining an offense"; id.; while specific intent involves "conscious objective . . . to cause [a] result . . . ." (Internal quotation marks omitted.) *State* v. *Holmes*, 75 Conn. App. 721, 737, 817 A.2d 689, cert. denied, 264 Conn. 903, 823 A.2d 1222 (2003).

challenged jury instruction "[i]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled. . . . In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect [on] the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Salamon*, 287 Conn. 509, 573, 949 A.2d 1092 (2008). Having reviewed the charge as a whole, we cannot say that no injustice resulted. It is reasonably possible that the jury was misled.

The court instructed the jury on general intent and referenced that definition numerous times. Nowhere in its instructions did the court define specific intent. This is not a situation in which, despite an improper instruction on intent, the court subsequently instructed the jury properly on intent, thereby eliminating the risk of jury confusion as to that element. See *State* v. *Prioleau*, 235 Conn. 274, 321–22, 664 A.2d 743 (1995) (jury not reasonably misled when court made one reference to general intent but repeatedly instructed on specific intent); *State* v. *Austin*, supra, 244 Conn. 235–37 (jury not reasonably misled when, despite reference to improper instruction on intent, court referenced proper instruction on intent numerous times). Here, the court's several instructions as to general intent and lack of an instruction as to specific intent constitute reversible error. See *State* v. *DeBarros*, 58 Conn. App. 673, 679–84,

755 A.2d 303 (reversal warranted when court improperly instructed on general intent in initial charge plus two supplemental charges when only instruction on specific intent required and court referenced improper general intent instruction numerous times), cert. denied, 254 Conn. 931, 761 A.2d 756 (2000). The fourth prong of *Golding* therefore is satisfied. Accordingly, the judgment of conviction is reversed.

II

The defendant next claims that there was insufficient evidence to sustain his conviction of possession of narcotics with intent to sell within 1500 feet of a school and possession of drug paraphernalia with intent to use within 1500 feet of a school in violation of §§ 21a-278a (b) and 21a-267 (c), respectively.[5] We must address these claims to determine whether to order a new trial on these counts or simply to vacate the conviction because of double jeopardy considerations. See *State* v. *Padua*, 273 Conn. 138, 178, 869 A.2d 192 (2005) (retrial barred and defendant entitled to acquittal if evidence insufficient to support conviction). We agree with the defendant's claims.

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force

---

[5] To the extent that this claim is unpreserved, the defendant seeks review under *Golding*. We note that "[a]ny defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*. . . . [N]o practical reason exists to engage in a *Golding* analysis of a sufficiency of the evidence claim . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Singleton*, 97 Conn. App. 679, 684 n.7, 905 A.2d 725, cert. granted on other grounds, 280 Conn. 949, 912 A.2d 484 (2006).

of the evidence established guilt beyond a reasonable doubt. . . . We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Davis*, 283 Conn. 280, 329–30, 929 A.2d 278 (2007).

A

The defendant contends that the state did not meet its burden of proving that the conduct at issue in the crimes of possession of narcotics with intent to sell within 1500 feet of a school and possession of drug paraphernalia with intent to use within 1500 feet of a school occurred within 1500 feet of a school because there was no testimony establishing that the school identified in the information as Timothy Dwight School was a "public or private elementary or secondary school"; General Statutes §§ 21a-278a (b) and 21a-267 (c); as required under the respective statutes. We agree.

To be convicted of possession of narcotics with intent to sell within 1500 feet of a school and possession of drug paraphernalia with intent to use within 1500 feet of a school, the state must prove, inter alia, that the forbidden acts occurred within 1500 feet of "the real property comprising a public or private elementary or secondary school . . . ." General Statutes §§ 21a-278a (b) and 21a-267 (c). The state's proof as to this element of these crimes was limited to the testimony of Clifford

Daniels, a New Haven board of education district supervisor. He testified that Timothy Dwight School was a public school and that it was one of the schools in his district.[6] Daniels did not testify as to whether Timothy Dwight School was an elementary school or a secondary school, nor did he relate the grades taught there. The only evidence adduced was that it was a New Haven public school.

The defendant argues that the evidence adduced at trial was insufficient because the category of "public schools" can include schools, such as preschools, which are not elementary or secondary schools. The state argues, on the other hand, that Daniels' testimony that Timothy Dwight School was a New Haven public school was sufficient evidence to satisfy the element that the school was a public elementary or secondary school for purposes of §§ 21a-278a (b) and 21a-267 (c). It argues, referencing General Statutes § 10-4, that the term "elementary school" includes preschool.

We construe the elements of §§ 21a-278a (b) and 21a-267 and apply them to the facts as reasonably could be

---

[6] When the prosecutor asked the grades or ages of the children who attended that school, the court sustained defense counsel's objection. The prosecutor then asked: "What grades?" Defense counsel objected to that question. Out of the presence of the jury, the state argued that the question was relevant for proving that the defendant was not a student at that school as required by General Statutes § 21a-267 (c). Defense counsel contended that permitting Daniels to testify as to the ages of the children who attended the school would be prejudicial to the defendant. The parties then stipulated that the defendant was not enrolled at the school on the day in question. The court noted that it would permit the state to question the witness as to the highest grade level at the school but would not permit a question regarding the range of grades or ages of the students who attended the school. When the jury was brought back into the courtroom, the prosecutor concluded his direct examination of Daniels by asking him if the Timothy Dwight School was a public school, to which Daniels responded affirmatively. Defense counsel conducted no cross-examination.

The state has not argued that this is a situation warranting a new trial on the ground that the court improperly had sustained the defendant's objections to evidence, which, if admitted, would have satisfied an element of the crime in question.

found by the jury. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes." (Internal quotation marks omitted.) *State* v. *Rios*, 110 Conn. App. 442, 449, 954 A.2d 901 (2008).

The crimes of possession of narcotics with intent to sell within 1500 feet of a school and possession of drug paraphernalia with intent to use within 1500 feet of a school require proof that the conduct occur within 1500 feet of "the real property comprising a public or private *elementary* or *secondary* school . . . ." (Emphasis added.) General Statutes §§ 21a-267 (c) and 21a-278a (b). The statutes in title 10 indicate that there are public schools that are neither elementary schools nor secondary schools. For instance, § 10-4 (a) provides that the state board of education has general supervision and control over "preschool, elementary and secondary education, special education, vocational education and adult education . . . ."[7] General Statutes § 10-4 (a). In other statutes, the legislature includes kindergarten when discussing elementary education but does not include preschool. See General Statutes § 10-145d (f) (under state board regulations for teacher certification, endorsement to teach elementary education valid for

---

[7] The statutes in title 10 demonstrate that elementary schools include special education and that secondary schools include any regional vocational agriculture center. General Statutes § 10-282 (1) and (2). Those statutes, however, treat preschool differently from elementary school. See, e.g., General Statutes §§ 10-145d (f) and 10-273a.

kindergarten through grade six, inclusive); General Statutes § 10-273a (town transporting children to elementary school including kindergarten may seek reimbursement for transportation cost). Because public schools exist that are neither elementary schools nor secondary schools, Daniels' testimony that the Timothy Dwight School was a public school was not sufficient to support a finding that the conduct occurred within 1500 feet of an elementary or secondary school.[8]

Our Supreme Court recently decided *State* v. *King*, 289 Conn. 496, 958 A.2d 731 (2008), in which it held that there was sufficient evidence from which the jury could have concluded beyond a reasonable doubt that Kolbe Cathedral High School in Bridgeport was a school within the meaning of § 21a-278a (b). In that case, four witnesses testified that the location where a narcotics transaction occurred involving the defendant was within 1500 feet of a school, which they referred to as "Kolbe Cathedral High School" or "Kolbe Cathedral." Id., 521. The court concluded that "the jurors, without question, were able to determine on the basis of the testimony adduced at trial and their common knowledge about the familiar topic of school, that Kolbe Cathedral High School constituted a school, as that term was identified by the trial court's instructions." Id., 522.[9] The name of the school in *King*—Kolbe Cathedral

---

[8] In *State* v. *Pagan*, 100 Conn. App. 671, 675, 918 A.2d 1036, cert. denied, 282 Conn. 919, 925 A.2d 1102 (2007), this court concluded that testimony that a sale of narcotics by the defendant occurred within 1500 feet of the Vincent E. Mauro School "alone would have been enough to satisfy the location element of [General Statutes § 21a-278a (b)]." That case concerned the issue of how far the sale was from the school, that is to say, whether the proscribed conduct occurred *within 1500 feet* of the Vincent E. Mauro School. The issue of whether there was sufficient evidence that the Vincent E. Mauro School was, in fact, a public or private elementary or secondary school was not before the court in *Pagan*.

[9] In *King*, the trial court in its instructions to the jury stated that "[a]n elementary or secondary school is a school for any . . . combination of grades below grade seven. A secondary school is a school for any combination of grades seven through twelve, and may include any separate combina-

*High School*—was sufficient evidence from which the jury could have determined, on the basis of common knowledge and experience, the nature of the school. A high school ordinarily is a secondary school. In the present case, the name of the school at issue—Timothy Dwight School—alone does not indicate whether the school is an elementary or secondary school. The term does not exclude, for example, a preschool or school for adult education. It is not necessarily within the common knowledge and experience of the jury that the Timothy Dwight School, by virtue of its status as a public school, was either an elementary or secondary school.

Because there was no evidence as to whether Timothy Dwight School was an elementary or secondary school, and this is an element of both charges at issue, we conclude that there was insufficient evidence to support the defendant's conviction of the crimes of possession of narcotics with intent to sell within 1500 feet of a school and possession of drug paraphernalia with intent to use within 1500 feet of a school.

B

With respect to the charge of possession of narcotics with intent to sell within 1500 feet of a school, the defendant also argues that there was insufficient evidence as to another aspect of the element requiring intent to sell narcotics at a location that is within 1500 feet of a school. The defendant argues that there was no evidence that he intended to sell at any particular location. We agree.

Section 21a-278a (b) requires, as an element of the offense, an intent to sell or dispense the narcotics at a location that is within 1500 feet of a school. *State* v.

tion of grades of five and six or grades seven and eight." (Internal quotation marks omitted.) *State* v. *King*, supra, 289 Conn. 519. Defense counsel neither requested a particular definition of the term "school" nor took exception to trial court's charge. Id.

*Denby,* supra, 235 Conn. 483. "[T]he question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct . . . . [W]hether such an inference should be drawn is properly a question for the jury to decide." (Internal quotation marks omitted.) *State* v. *Downey,* 45 Conn. App. 148, 154, 694 A.2d 1367, cert. denied, 242 Conn. 909, 697 A.2d 367 (1997).

"[I]t is a function of the jury to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . Because [t]he only kind of an inference recognized by the law is a reasonable one . . . any such inference cannot be based on possibilities, surmise or conjecture. . . . It is axiomatic, therefore, that [a]ny [inference] drawn must be rational and founded upon the evidence. . . . However, [t]he line between permissible inference and impermissible speculation is not always easy to discern. When we infer, we derive a conclusion from proven facts because such considerations as experience, or history, or science have demonstrated that there is a likely correlation between those facts and the conclusion. If that correlation is sufficiently compelling, the inference is reasonable. But if the correlation between the facts and the conclusion is slight, or if a different conclusion is more closely correlated with the facts than the chosen conclusion, the inference is less reasonable. At some point, the link between the facts and the conclusion becomes so tenuous that we call it speculation. When that point is reached is, frankly, a

matter of judgment." (Internal quotation marks omitted.) *State* v. *Niemeyer*, 258 Conn. 510, 518, 782 A.2d 658 (2001).

For there to be sufficient evidence of intent to sell at a specific location under § 21a-278a (b), there must be evidence of something more than just an intent to sell at some unspecified location. In *State* v. *Harris*, 60 Conn. App. 436, 442–43, 759 A.2d 1040, cert. denied, 255 Conn. 907, 762 A.2d 911 (2000), this court accepted the state's concession of insufficient proof as to the element of intent to sell narcotics at a specific location within the proscribed zone when the only evidence as to that element was the defendant's possession of seventy-one individual parcels of crack cocaine. Mere possession of narcotics with an intent to sell at some unspecified point in the future, at some unspecified place, is not enough. Quite obviously, if one is apprehended while coincidentally passing through a location, there is no logical inference that he intended to sell at the location of the apprehension. In contrast, in *State* v. *Francis*, 90 Conn. App. 676, 682–83, 879 A.2d 457, cert. denied, 275 Conn. 925, 883 A.2d 1248 (2005), this court found there to be sufficient evidence of intent to sell within the proscribed zone where the defendant not only possessed narcotics packaged for sale and money layered in a way to facilitate quick transactions, but also, among other things, hid his drugs behind his car's gasoline cap and walked away, which expert testimony revealed was consistent with drug sale activity. See also *State* v. *Pagan*, 100 Conn. App. 671, 674–75, 918 A.2d 1036 (defendant observed selling drugs), cert. denied, 282 Conn. 919, 925 A.2d 1102 (2007); *State* v. *Myers*, 101 Conn. App. 167, 177–81, 921 A.2d 640 (defendant's transfer of drugs at location indicative of intent to sell at specific location), cert. granted on other grounds, 283 Conn. 906, 927 A.2d 919 (2007); *State* v. *Knight*, 56 Conn. App. 845, 852, 747 A.2d 13 (2000)

(defendant showed marijuana and cocaine to plain clothed officer who had asked for a " 'ten' ").

In the present case, there was evidence indicating an intent to sell. Expert testimony and common sense suggest that the quantity of narcotics, the packaging of the narcotics, the empty bags, the razor blade and the small denominations of money found in the defendant's pockets were consistent with the street level sale of $10 bags of crack cocaine. See *State* v. *Francis*, supra, 90 Conn. App. 682 (quantity of narcotics and manner of packaging indicative of intent to sell). When the police detained Williams, the defendant started to pedal his bicycle. There was expert testimony that street level dealers typically would attempt to run away to avoid the police.

The evidence presented in this case, however, did not raise a permissible inference of an intent to sell at the specific location where the defendant was arrested. When stopped by the police, the defendant was on his bicycle in the neighborhood in which he lived. The police did not observe him engage in any activity consistent with immediate drug sales but, rather, stopped him because he resembled the description of a robbery suspect. There was no evidence that the defendant was in the location at issue for any length of time sufficient to support an inference that he was doing more than passing through.[10] The police officers who were dispatched to the area in response to a robbery complaint apprehended the defendant and Williams virtually immediately upon seeing him. Although there is evidence, such as the quantity of drugs found on his person

[10] A defense witness testified that she, Williams and another person were walking when the defendant, who was riding his bicycle, approached them. She further testified that at the time of apprehension, the four were talking. Rivera testified that at the time of apprehension, the defendant and Williams were walking. Neither version of events supports an inference that the defendant was doing more than passing through the area.

and the manner of their packaging, that supports an inference of an intent to sell, the record is devoid of any direct or circumstantial evidence from which the inference of intent to sell at the place of apprehension can permissibly be drawn.[11] We conclude that there was insufficient evidence that the defendant intended to sell narcotics at a location that was within 1500 feet of a school.

The judgment is reversed and the case is remanded for a new trial on the charges of possession of narcotics with intent to sell by a person who is not drug-dependent and possession of drug paraphernalia with intent to use and with direction to render judgment of not guilty of the charges of possession of narcotics with intent to sell within 1500 feet of a school and possession of drug paraphernalia with intent to use within 1500 feet of a school.

In this opinion HARPER, J., concurred.

BISHOP, J., concurring in part and dissenting in part. I agree with my colleagues in the majority that because the trial court failed to instruct the jury regarding specific intent, the judgment of conviction must be reversed. To that extent, I concur with the majority. Because, however, I am not persuaded by the defendant's sufficiency arguments, I would remand this matter for a new trial on all counts.

The majority concludes that the evidence was insufficient to prove that the defendant possessed narcotics

[11] The state argues that because the defendant was apprehended while riding a bicycle while his companion was on foot, and expert testimony suggested that such a combination was typical of drug dealing, an inference of intent to sell at that location could permissibly be made. We hold that, in itself, the combination of a bicycle rider and a pedestrian is too slender a reed on which to draw the inference of intent to sell at the precise location of apprehension, as also is the fact that the defendant's apprehension occurred in his home neighborhood.

with the intent to sell within 1500 feet of a public elementary or secondary school in violation of General Statutes § 21a-278a (b) and that he possessed drug paraphernalia with the intent to use within 1500 feet of such a school in violation of General Statutes § 21a-267 (c). For the majority, the evidence was insufficient in two ways: (1) there was no evidence from which the jury could have concluded that the Timothy Dwight School in New Haven is a "public or private elementary or secondary school" within the meaning of the applicable statutes and (2) although the evidence may have been sufficient that the defendant possessed drugs with the intent to sell, it was wanting in regard to the charge that he intended to sell at a particular place that was within 1500 feet of a public school. Because I believe that the evidence adduced at trial provided a sufficient basis on which the jury could have concluded that the defendant possessed narcotics with the intent to sell and possessed drug paraphernalia with the intent to use within 1500 feet of a public school, I respectfully dissent.

Well established decisional law guides our analysis. As our Supreme Court has noted: "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or

inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Aloi*, 280 Conn. 824, 842, 911 A.2d 1086 (2007).

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Smith*, 110 Conn. App. 70, 75, 954 A.2d 202,

cert. denied, 289 Conn. 954, 961 A.2d 422 (2008). The question on appeal, therefore, is not what inferences and conclusions we would have drawn from the direct and circumstantial evidence but, rather, whether the jury could reasonably have concluded as it did. Id. With those principles in mind, and an eye toward sustaining the verdict of the jury, I turn to the facts of the case at hand.

The majority concludes that there was insufficient evidence from which the jury could reasonably have concluded that the Timothy Dwight School is a public or private elementary or secondary school so as to invoke the provisions of General Statutes §§ 21a-267 (c) and 21a-278a (b).[1] The district supervisor of the New Haven board of education testified that the Timothy Dwight School is "one of my schools in my district" and that it is a public school. The jury also heard testimony that Timothy Dwight is a school with grades.[2] Given this testimony, it was not unreasonable for the jury to have concluded that the Timothy Dwight School is a public elementary or secondary school.

The majority, however, concludes that the evidence that the Timothy Dwight School is either a public elementary or secondary school is wanting because school

[1] General Statutes § 21a-267 (c) provides for additional punishment for one who possesses drug paraphernalia "within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school and who is not enrolled as a student in such school . . . ."

General Statutes § 21a-278a (b) provides for additional punishment for one who possesses narcotics with the intent to sell "within one thousand five hundred feet of, the real property comprising a public or private public or private elementary or secondary school . . . ."

[2] When the state inquired as to the ages and grades of the children who attended the school, the defendant objected, and the objection was sustained. The state then asked: "What grades?" The witness began answering and stated, "[t]he grades are from," and then the defendant objected. That objection was never sustained by the court, that partial answer was never stricken from the record and the jury was never instructed that it could not consider the answer. Therefore, the jury was informed that the school had "grades," and this testimony is part of the evidentiary record.

boards have statutory responsibilities over preschool, special education, vocational education and adult education. In making this assessment, I believe, respectfully, that the majority has conflated purpose with buildings. The issue is not what takes place within an elementary or secondary school but, rather, what sort of a building it is. The majority also too narrowly defines elementary and secondary schools as though buildings that house them do not serve, as well, to perform other functions of the board of education. For example, General Statutes § 10-282 (1) provides in relevant part: " 'Elementary school building' means any public school building designed to house any combination of grades below grade seven or children requiring special education." Section 10-282 (2) provides in relevant part: " 'Secondary school building' means any public school building designed to house any combination of grades seven through twelve or any regional agriculture and technology education center . . . and may also include any separate combination of grades five and six or grade six with grades seven and eight in a program approved by the State Board of Education when the use of special facilities generally associated with secondary schools is an essential part of the program for all grades included in such school . . . ." In short, the buildings that comprise elementary and secondary schools provide a myriad of educational opportunities. It would require speculation or conjecture to fathom an educational opportunity provided by a board of education that does not take place in a building that is either an elementary or secondary school.

Nor do I believe that the majority's construction comports with the purpose of §§ 21a-267 (c) and 21a-278a (b) to create a safe no drug zone within 1500 feet of elementary and secondary school buildings. These statutes relate to geographic distance from a place of drug activity to the location of a school building, and they

pertain no matter whether school is in session or what activities happen to take place in the school. Thus, whether adult education classes or preschool may be conducted in either an elementary or secondary school building is irrelevant.

As the majority notes, in *State* v. *King*, 289 Conn. 496, 958 A.2d 731 (2008), jurors may rely on "their common knowledge about the familiar topic of school" in determining whether the school in question fits within the 1500 foot prohibition contained in the applicable statutes. Id., 522. As a practical matter, I think that it is well within the common knowledge of the average juror that boards of education maintain elementary and secondary schools in which a variety of educational programs take place. Hearing that the Timothy Dwight School is a graded school within the supervision of the New Haven board of education, the jury did not have to speculate that the building comprising the Timothy Dwight School served some other purpose for which there may be grades. Rather, the jury was entitled to infer, from the evidence, that the Timothy Dwight School is a public elementary or secondary school. On this record, I believe that there was sufficient evidence that the Timothy Dwight School fits within the statutory definition of a public elementary or secondary school.

The majority also concludes that the evidence was insufficient to prove that the defendant intended to sell drugs in a particular place within 1500 feet of a school. As the majority notes, to prove one guilty of possession of drugs with the intent to distribute within 1500 feet of a school, the state need not prove that a defendant intended to be within 1500 feet of a school but simply that such a person possessed narcotics with the intent of distributing them at a place that is geographically within 1500 feet of a public school. *State* v. *Denby*, 235 Conn. 477, 483, 668 A.2d 682 (1995). "[D]irect evidence of the accused's state of mind is rarely available. . . .

Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Internal quotation marks omitted.) *State* v. *Aloi*, supra, 280 Conn. 843. "Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one." (Internal quotation marks omitted.) *State* v. *Silva*, 285 Conn. 447, 460, 939 A.2d 581 (2008), aff'd after remand, 113 Conn. App. 488, 966 A.2d 798 (2009).

In this instance, the state adduced evidence from which the jury reasonably could have concluded that when the defendant was apprehended within 1500 feet of the Timothy Dwight School, he was fully equipped with the goods and in the manner of a street level narcotics dealer. In various pockets of his clothes, the police found $876 in denominations of $1, $5, $10, and $20. In the defendant's pockets, the police also discovered nineteen bags with crack cocaine, various empty bags and a razor wrapped in a plastic bag. That the defendant was geared and ready for business can hardly be disputed.

The majority concludes, however, that evidence that the defendant was equipped and ready to sell some place is insufficient to conclude that he intended to sell at the place where he was detained. But in reaching its conclusion, the majority fails to discuss additional evidence, which, I believe, fills the evidentiary gap and provides an adequate basis for the jury's determination on these charges. The record reveals evidence that as the defendant sat astride a bicycle, he was stopped on the sidewalk in front of 47 Waverly Street in New Haven in the company of another individual, Joshua Williams.[3]

---

[3] The jury heard from defense witness Shirley Warren that more people besides Williams were at the scene with the defendant when the police confronted them. The jury was free to credit police testimony that only the defendant and Williams were together when the police confronted them or evidence that others were present as well. In either case, the evidence

Thus, this case is unlike those that wrestle with the notion of a transient defendant who is merely passing through an area located within 1500 feet of a school when he is detained by the police. Here, in fact, the defendant was in his own neighborhood. Shirley Warren, a defense witness, testified that she was friendly with the defendant's siblings and that when the police detained the defendant, she went to his nearby house at 74 Day Street to inform his mother. Warren indicated that the Lewis home can be seen from Waverly Street.

Additionally, Detective Michael Wuchek of the New Haven police department, an expert in the ways of street level narcotics dealers, testified that the neighborhood in which the defendant lived and had been detained was a high level drug area in which Wuchek had participated in approximately twenty drug arrests. He also testified that the packaging of drugs in several bags suggests $10 purchases and that a seller of street level drugs often carries money in small denominations to make change and in different pockets as a defense to robbery. Wuchek stated that such dealers often confine their sales activities to one neighborhood, often one where they have family or where they are from, one whose alleys and yards are familiar to them so as to facilitate escape and to elude police detection or rival drug dealers. Finally, in this regard, Wuchek testified that such dealers often travel in pairs, with one on foot and another on a bike, one serving as a lookout and protector, while the other engages in transactions. On the basis of Wuchek's testimony, which dovetails with the operative facts presented to the jury regarding the defendant's manner and circumstances, it was not unreasonable for the jury to infer that the defendant was not only geared to sell but open for business when and where he was confronted by the police.

makes it clear that the defendant was not simply passing by, en route to another place.

For the foregoing reasons, I believe the evidence was sufficient to convict the defendant of possession of drug paraphernalia with intent to use within 1500 feet of a public school and possession of narcotics with the intent to sell within 1500 feet of a public school. Accordingly, I would reverse the conviction and remand the matter for a new trial on all counts.